531 A.2d 1158

Council of Plymouth Township, Appellant *v.* Montgomery County, Paul B. Bartle, Allan C. Myers, Rita C. Banning, Commissioners, Appellees.

O'Hara Sanitation Company Inc. and Patrick O'Hara, Appellants *v.* County of Montgomery, Allan Myers, Paul B. Bartle and Rita C. Banning, Appellees.

Argued June 10, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE and COLINS.

*Arthur Lefkoe*, with him, *Howard Wishnoff, Wisler, Pearlstine, Talone, Craig & Garrity*, for appellant, Council of Plymouth Township.

*Robert J. Kerns, Landis, Williams & Kerns*, for appellants, O'Hara Sanitation Company, Inc.

*Bruce J. Eckel*, Assistant County Solicitor, for appellee, County of Montgomery.

OPINION BY JUDGE MACPHAIL, October 1, 1987:

Appellants O'Hara Sanitation Company, Inc. (O'Hara) and Plymouth Township (Township) appeal orders of the Montgomery County Court of Common Pleas denying their motions for post-trial relief and rendering previous orders final which denied O'Hara's request for a permanent injunction and dismissed the Township's complaint in mandamus.[1] For the reasons set forth below, we affirm.

The present controversy arises from a decision of the Montgomery County Commissioners to close the Montgomery County Landfill as of August 20, 1984 to all entities which did not have written agreements with the County for solid waste disposal. Both Appellants have utilized the landfill without benefit of written contracts and are therefore affected by the County's decision.

As found by the trial court, the County in 1971 leased land in quarries located in Upper Merion and West Conshohocken Townships for use as landfills. The sites were prepared to comply with Department of Environmental Resources regulations so that a permit could be obtained for a disposal facility. *See* Section 201(a) of the Solid Waste Management Act (Act), Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §6018.201(a); 25 Pa. Code §§75.24-75.25. The trial court found that the cost of these preparations necessitated the charging of higher fees than other available landfills.

Regarding the subsequent operation of the landfill, the trial court made the following findings of fact:

14. The landfill was opened for the deposit of solid waste in late 1971.

---

[1] By order entered March 17, 1986, the two appeals were consolidated *sua sponte* by this Court.

15. Initially, and throughout the 1970s it was difficult for the County to get municipalities and private haulers to dump at the County's facilities because the per-ton price was higher than that charged at other landfills in the area.

16. Curtis Campman, the Director of Public Facilities in the 1970s, made contact with municipalities and some private hauler associations to encourage them to enter into contracts with the County to commit all their solid waste to the County landfill, with an assurance of protection if they did so.

17. It was Mr. Campman's position that the County was not getting the trash stream because there were unregulated landfills (particularly Moyer's landfill) where the tipping fees were considerably less than the County's.

18. Until the capacity of the landfill became a documented problem, the County expressed its willingness to enter into long term contracts with those municipalities willing to commit their entire waste stream to the landfill.

19. During this period, none of the plaintiffs approached the County to ask for a long-term contract.

In 1984, the County received two reports from its consulting engineers, Gannett Fleming Environmental Engineers, Inc., regarding the projected remaining capacity of the landfill. The first report indicated that if the current rate of dumping continued, the landfill would not be able to accept any trash beyond March 31, 1984. According to a later report, the landfill could accept trash until April 1, 1986 if only *contracted* trash were dumped. *See* Finding of Fact # 3.

On July 19, 1984, the County Commissioners announced at a public meeting that they had unanimously

decided to close the landfill to all parties but those with whom the County had written contracts, based on the engineers' reports.[2]

Appellant Township filed a complaint in mandamus on August 10, 1984 requesting that the common pleas court direct the County to receive refuse through the Township's municipal trash collection system. On September 27, 1984, Appellant O'Hara filed a complaint in equity seeking an injunction restraining the County from terminating or interfering with O'Hara's continued use of the landfill. The County's preliminary objections to each complaint were dismissed by the trial court, and the County subsequently filed an answer and a counter-claim to each complaint. The answers contained identical new matter in which the County alleged, *inter alia,* that both Appellants could have entered into long-term written contracts for use of the landfill, at the same rates charged the other municipalities.

After hearing nine days of testimony, Judge ANITA B. BRODY[3] dismissed the Township's complaint and denied O'Hara's request for a permanent injunction by orders entered February 4, 1985. Judge BRODY concluded as a matter of law that the County is not subject to an affirmative duty to accept trash from all townships and haulers under either the Solid Waste Management Act

---

[2] The County determined it had written agreements with the following parties: Abington Township, Cheltenham Township, Upper Dublin Township, Upper Moreland Township, Whitemarsh Township, Lower Merion Township, Upper Merion Township, West Conshohocken, Hatboro Borough, and Willow Grove Naval Air Station.

[3] Appellants' cases were consolidated for disposition by Judge BRODY with cases brought against the County by the Borough of Jenkintown, the Borough of Conshohocken, and a group of private trash haulers and taxpayers.

or the Second Class County Code (Code),[4] and that the County did not abuse its discretion in closing the landfills to Appellants and the other plaintiffs below.[5] On December 16, 1985, Judge BRODY issued orders which denied Appellants' motions for post trial relief and rendered the February 4, 1985 orders final. Appellants' appeals from the December 16, 1985 orders are now before our Court.[6]

The first issue, which has been raised by both Appellants, is whether the Code limits the right of the County to deny access to the landfill and imposes an affirmative duty on the County to make the landfill available to *all* citizens, with or without a written contract.

The County's authority to operate the landfill is granted by Section 2175 of the Code, 16 P.S. §5175, which provides:

> The county commissioners of the county shall have the power to operate garbage and refuse disposal plants or facilities, sanitary land fills and incinerating furnaces, and to enter into agreements or contracts with any person, corporation or political subdivision for the disposal of garbage and refuse in such facilities and sanitary land fills erected and maintained by the county, as provided in article twenty-five of this act, and to charge and receive fees for such service.

The County is authorized to acquire land on which to erect a landfill under Section 2193 of the Code, 16 P.S.

---

[4] Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S. §§3101-6302.

[5] The County was, however, estopped from prohibiting the Borough of Conshohocken from using the landfill.

[6] O'Hara's appeal, originally filed with the Superior Court, was transferred to this Court on February 14, 1986.

§5193. Under Section 2501, 16 P.S. §5501, contained in Article 25 of the Code to which Section 2175 refers, such land "shall be vested in the county for the use of the people thereof and for no other use except as hereinafter provided."

Appellants argue that once the County acquired the land and undertook the operation of the landfill, it was bound by the provisions in Section 2501 that the sites of the landfill be vested in the County "for the use of the people." They maintain that the County failed to fulfill this mandate by permitting only those parties to which it deemed itself contractually obligated access to the landfill and not *all* the people of the County.

The fallacy in this argument is, of course, that Section 2175 does not require that County property be used for "*all* the people thereof," but only that it be used for "the people thereof and no other use." We will not read into Section 2175 that which is not there, in deference to the well-established principle of statutory construction that a court has no power to insert a word into a statute if the Legislature has failed to supply it. *Garcia v. Community Legal Services Corp.*, 362 Pa. Superior Ct 484, 524 A.2d 980 (1987); *Seltzer Appeal*, 52 Pa. Commonwealth Ct. 121, 415 A.2d 1250 (1980). As so aptly stated by Judge BRODY: "If Montgomery County were keeping its landfill open to haulers from Bucks or Chester County to the exclusion of the plaintiffs herein, this argument would be more persuasive."[7]

We therefore conclude that the Code imposes no duty on the County to keep the landfill open to all municipal and private haulers, including Appellants herein.

The next issue Appellants raise is whether the County's decision to close its landfill to certain parties

---

[7] Opinion of March 27, 1986 at 19.

was an arbitrary and capricious abuse of discretion. As stated by O'Hara, the crux of the argument appears to be that the County treated "arbitrarily and capriciously some municipalities favorably to the detriment of other private haulers and other municipalities." O'Hara Brief at 32. We, however, agree with the trial court that there was no arbitrary and capricious abuse of discretion on the part of the County.

Initially, we must recognize our limited role in reviewing actions taken by a governmental unit such as the County. As our Supreme Court has stated:

> Judicial interference with the actions of municipal authorities should not be undertaken in the absence of proof of an abuse of power, bad faith, fraud or arbitrary and capricious action; the courts should be loathe to review the details of the effectuation of actions of municipal authorities. . . . While discretionary power in the hands of a municipal authority or body does not immunize it from judicial review, the scope of that review must be limited to the determination of whether the exercise of discretion has been flagrantly abused.

*Flaherty v. Allegheny Port Authority,* 450 Pa. 509, 516-517, 299 A.2d 613, 617-618 (1973) (citations omitted). "Abuse of discretion" has been defined as "a clear overriding of the law, or a manifestly unreasonable exercise of judgment, or evidence of partiality, ill will or bias in reaching a conclusion." *E-Z Parks, Inc. v. Philadelphia Parking Authority,* 100 Pa. Commonwealth Ct. 303, 306, 514 A.2d 318, 319 (1986) (citing *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A.2d 331 (1954)). Appellants argue that even though the County first became aware of capacity problems with the landfill as early as 1978,[8] it nevertheless renewed

---

[8] *See* Notes of Testimony (N.T.) from January 8, 1985 at 21, Reproduced Record (R.R.) at 147a.

long-term contracts with several municipalities and entered into new contracts. The County's agreement with Whitemarsh Township was extended to 1994;[9] the County entered into a new agreement with Upper Moreland Township to commence in 1981;[10] the Borough of Hatboro's agreement, which had expired in 1980, was reinstated for the term January 1, 1982 to December 31, 1986;[11] the County entered into a new agreement with Upper Merion Township to continue until January 1, 1985;[12] the agreement with Abington Township was renewed for a five-year period to commence January 1, 1982, which included in the agreement the townships of Cheltenham, Upper Dublin and Springfield;[13] and the County did not choose to terminate a contract with the federal government for disposal of trash from the Willow Grove Naval Air Station, even though it had the option to do so with thirty days notice.[14]

We reject Appellants' arguments that these actions on the part of the County were a "contradictory and discriminatory" response to the capacity problem at the landfill. The County's decision to close the landfill to Appellants while honoring long-term contracts with other parties, and even renewing contracts, was based on its desire to prolong the usefulness of the landfill. As found by the trial court, the testimony

indicated that the Commissioners based their decision to close the landfill on a report by the County consulting engineers that the landfill would be full by March 31, 1985, on the

---

[9] N.T. from January 8, 1985 at 31-32, R.R. at 157a-158a.
[10] N.T. from January 8, 1985 at 22-23, R.R. at 148a-149a.
[11] N.T. from January 8, 1985 at 37-39, R.R. at 163a-165a.
[12] N.T. from January 8, 1985 at 40-41, R.R. at 166a-167a.
[13] N.T. from January 8, 1985 at 43-48, R.R. at 169a-174a.
[14] N.T. from January 8, 1985 at 55-56, R.R. at 181a-182a.

County's outstanding responsibilities to certain municipalities and other haulers to whom the County felt it had contractual obligations, and on the phenomenal cost to the County of fulfilling these obligations at alternative dumping cites [sic] if the County landfill were to close permanently.

Opinion of March 27, 1986 at 26-27.

Finding no proof of fraud, collusion, bad faith or abuse of power, we will not inquire into the wisdom of the County's actions or substitute *judicial* discretion for *administrative* discretion. *Weber v. Philadelphia,* 437 Pa. 179, 262 A.2d 297 (1970). We, therefore, affirm Judge BRODY's conclusion that there was no indication of an arbitrary and capricious abuse of discretion in the County's July 19, 1984 decision to close the landfill to Appellants.

Appellant O'Hara raises an additional issue, namely whether the County should be estopped from preventing O'Hara's use of the landfill.

As previously recognized by this Court, the doctrine of equitable estoppel prevents one from doing an act differently from the manner in which another was induced by word or deed to expect. *Derry Township School District v. Suburban Roofing Co., Inc.,* 102 Pa. Commonwealth Ct. 54, 517 A.2d 225 (1986) (citing *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502 (1983)). The doctrine "recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity." *Novelty Knitting Mills, Inc.,* 500 Pa. at 435, 457 A.2d at 503. *See also Governor's Energy Council v. American Energy Services, Inc.,* 90 Pa. Commonwealth Ct. 168, 494 A.2d 72 (1985), *appeal dismissed,* Pa. , 527 A.2d 531 (1987).

O'Hara argues that estoppel should apply because the County misled O'Hara into believing that it would have the uninterrupted use of the landfill, and relying on this belief, O'Hara contracted with customers, purchased machinery and generally organized its business around the landfill. We agree with the trial court, however, that O'Hara presented no evidence of what action on the part of the County it relied upon or what detriment it suffered. As such, O'Hara has not met its burden of establishing the estoppel. *Novelty Knitting Mills, Inc*.

Finally, Appellants raise a number of procedural and evidentiary issues which we will summarily address.

First, Appellants contend that the *sua sponte* decision of the trial court to bifurcate the County's counterclaim for declaratory judgment was in error. Under Pa. R.C.P. No. 213(b), the court is authorized, on its own motion or the motion of a party, to order a separate trial of such a counterclaim, and this decision is within the court's discretion. *See Ecksel v. Orleans Construction Co.*, 360 Pa. Superior Ct. 119, 519 A.2d 1021 (1987). Finding no abuse of that discretion, we will affirm the court's decision.

Appellants argue, additionally, that the trial court erred in refusing to admit all relevant portions of a daily record kept by the County's Director of Solid Waste, Charles Park, and the court's in camera review thereof. We disagree.

After reviewing the record book in camera to determine. if it was a business record or a personal diary, Judge BRODY ruled that except for portions protected by the attorney-client privilege, only the entries beginning August 17, 1984 through August 20, 1984 were to be admitted.[15] The court concluded that the record was a

---

[15] N.T. from January 18, 1985 at 562, R.R. at 687a. Counsel for Appellants sought to review all entries relevant to the closing of the landfill, in effect, the entire volume.

private diary and not a business record.[16] In rejecting Appellants' arguments that the court acted improperly, we note that questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and will not be reversed by an appellate court absent a clear abuse of that discretion. *Dean Witter Reynolds, Inc. v. Genteel*, 346 Pa. Superior Ct. 336, 499 A.2d 637 (1985). To show a clear abuse of discretion, actual prejudice must have occurred. *Id*. Further, the determination of whether a document is admissible as a business record under Section 6108(b) of the Uniform Business Records Act, 42 Pa. C. S. §6108(b), is also within the trial court's discretion. *Appeal of Chartiers Valley School District*, 67 Pa. Commonwealth Ct. 121, 447 A.2d 317 (1982), *appeal dismissed*, 500 Pa. 341, 456 A.2d 986 (1983). We find no abuse of the trial court's discretion and so will not disturb its rulings on this matter.

We likewise reject Appellants' argument that the trial court erred in applying a different evidentiary standard to a particular witness' direct testimony than it did to his cross-examination. As our courts have held, "the trial judges of this Commonwealth exercise broad powers concerning the conduct of trial, and have wide discretion in limiting the scope of both direct and cross examination of witnesses." *Noecker v. Johns-Manville Corp.*, 355 Pa. Superior Ct. 463, 474, 513 A.2d 1014, 1020 (1986). *See also Ball v. Rolling Hill Hospital*, 359 Pa. Superior Ct. 286, 518 A.2d 1238 (1986) (scope of cross-examination largely within trial judge's discretion).

Finally, Appellant O'Hara raises numerous exceptions to evidentiary rulings of the trial court which we will not address individually. We merely reiterate that the trial court has discretion over the admissibility of

---

[16] N.T. from January 18, 1985 at 619-620, R.R. at 744a-745a.

evidence, *Dean Witter Reynolds, Inc.*, over the examination of witnesses, *Noecker*, and generally enjoys broad discretion over the proceedings before it. *Posel v. Redevelopment Authority of the City of Philadelphia*, 72 Pa. Commonwealth Ct. 115, 456 A.2d 243 (1983).

In conclusion, we hold that the County has no affirmative, statutory duty to provide access to its landfill to *all* residents of Montgomery County, but is authorized to provide such service and maintain the sites to serve the best interests of the County. *See* Section 202 of the Code, 16 P.S. §3202. The County did not abuse this discretion in preventing Appellants from using the landfill in the interest of prolonging the life of that landfill. We, therefore, will not interfere with the County's actions or question the wisdom of its decision.

We, accordingly, affirm the December 16, 1985 orders of the Montgomery County Court of Common Pleas.

### ORDER

The orders of the Montgomery County Court of Common Pleas in the above-captioned proceedings are hereby affirmed.