571 A.2d 490

**THATCHER'S DRUGS OF WEST GOSHEN, INC., Appellee,**

v.

**CONSOLIDATED SUPERMARKETS, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1989.

Decided March 15, 1990.

Stephen J. Springer, Philadelphia, for appellant.

C. Richard Morton, West Chester, for appellee.

Before CAVANAUGH, MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

This case involves an appeal from the order of the Court of Common Pleas of Chester County enjoining the opening of a pharmacy by the appellant, Consolidated Supermarkets, Inc. We affirm.

The facts, as supported by the record, indicate that in 1973 the appellee/Ronald Zukin, president and sole stockholder of Thatcher's Drugs of West Goshen, Inc., entered into a ten-year lease agreement with the then owner (Enal Construction Co.) of a shopping complex in which his retail pharmacy business was to be located. At that time, the appellee also shared a common wall with Shop–Rite supermarket, a franchise operated by the appellant.

Sometime in 1976, the appellee began selling "drinks and milk". Thereafter, he noticed a sign in Shop–Rite's window: "Coming soon—a Shop–Rite pharmacy". When the appellee contacted Shop–Rite to complain, he was referred to a Joseph Greenblatt, the present vice-president and then controller of Consolidated Supermarkets, Inc.

The discussion had between the appellee and Greenblatt was one in which the latter stated: "We don't want you in the dairy business"; "you get out of the dairy business and we won't open a pharmacy...." The sign stayed in place until the appellee's refrigerator case was removed from the pharmacy.

When the ten-year lease expired in 1983, Zukin contacted the landlord (Enal) and informed it of his desire to renew the lease for an equal term. He was told "there were some problems" since Shop–Rite wanted the area "to go into the pharmacy business". After a subsequent discussion with Enal produced the same response the appellee began to

search for new accommodations, and he did find them within three blocks of the existing store. In fact, Zukin had executed a lease and drawn a check to pay for the rent for the proposed site. However, he contacted his former landlord to advise it that he was still interested in remaining at his old location.

As a result of speaking with representatives of Enal, Zukin received a new lease increasing the rent and requiring that he occupy additional space in the shopping center. Before agreeing to the terms of the new lease, the appellee contacted Greenblatt. The two met in October of 1983 and Zukin informed Greenblatt that: (1) he had been offered a new lease, (2) he had a lease at another location for ten years, and (3) he wanted "some assurances" from Greenblatt that Shop–Rite was not going to open a pharmacy. According to Zukin, Greenblatt's "direct words" were: "We don't hurt the little guys. We have no desire to want to hurt you and we have no intention of opening a pharmacy". Absent such "assurances", Zukin would not have contacted Enal, which he did, to renew his lease and advise his realtor that he would not be moving to the new location.

The saga continues with Zukin advertising via a window-sign his "soda drinks and soda business". This occurred in 1984. Shop–Rite reacted by placing its own sign for reading: "Shop–Rite Pharmacy coming soon". Again, Zukin contacted Greenblatt. As before, Greenblatt wanted Zukin out of the "soda" business before he would remove the "pharmacy" sign. The end result was that both parties removed the offending placards from their respective windows.

Thereafter, Zukin learned that Shop–Rite had executed an assignment of the Betty Brite Cleaners, Inc. lease with Enal. The cleaning shop was adjacent to Shop–Rite on the side of it opposite that of the appellee's pharmacy and was to be renovated to house a retail pharmacy in direct competition with Zukin. Efforts to dissuade Shop–Rite to discard the "pharmacy" idea proved fruitless, even though Zukin pointed out that its lease with Enal, at Section 52, prohibit-

ed the landlord from renting "any store within the premises for use as a drug store or pharmacy or for the sale of medical equipment or prosthetic supplies", the caveat being "[t]he foregoing restriction shall not apply to any portion of the shopping center presently used as a supermarket or department store." Id. As a consequence, Zukin filed a complaint seeking to enjoin the appellant from operating a pharmacy in the shopping center on grounds that, *inter alia*, it was violative of the terms of his agreement with Enal and the doctrine of equitable estoppel, *i.e.*, the appellee relied to his detriment on the assurances of the appellant's representative of non-competition. See Complaint, Paragraph 20. And, the appellee alleged, the effectuation of the appellant's intended pharmaceutical business would "irreparably injure and damage" his operation to the point of having to close. Id. at 21.

To assess the appellee's complaint, a hearing was conducted on May 7 and 8, 1987, and resulted in the issuance of a preliminary injunction by the Chancellor. Following a March 10, 1988, hearing, the court made findings of fact and conclusions of law (per order of May 9, 1988) resulting in the entry of a decree nisi permanently enjoining the appellant from establishing or operating a retail prescription pharmacy. With the denial of the appellant's exceptions, the decree nisi was made final and this appeal ensued.

Two issues are raised for our consideration, the first of which reads:

> Whether in the absence of a writing signed by the parties, the Statute of Frauds precluded the lower court from restricting the use Appellant made of its premises.

Before we may address the merits of the issue proffered, we need to respond to the appellee's assertion that the appellant has waived consideration of the matter since it does not appear in its exceptions.

Under Pa.R.Civ.P. 227.1, our Supreme Court implemented the procedure by which post-trial relief is to be sought, regardless of whether the action is at law or in equity or whether the action is tried with or without a jury.

See *Comment* to Rule 227.1. As is herein relevant, Rule 227.1 provides:

(a) After trial and upon the written Motion for Post–Trial Relief filed by any party, the court may:

\* \* \* \* \* \*

(1) ...

(2) ...

(3) ...

(4) affirm, modify or change the decision or decree nisi....

(5) ...

(b) Post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in ... request for findings of fact or conclusions of law ...; and

\* \* \* \* \* \*

(2) are specified in the motion. The motion shall state ... the grounds .... *Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.*

(c) Post-trial motions shall be filed within ten days after

(1) ...

(2) ... the filing of the decision or adjudication in the case of a trial without jury or equity trial.

In the case at bar, we find in the record the "Proposed Findings of Fact of the Defendant Consolidated Supermarkets, Inc." filed March 24, 1988, none of which discusses the Statute of Frauds [1] as a defense to the appellee's requested relief. Further, albeit the appellant makes mention of the Statute of Frauds under the heading: "Issue presented" in its Memorandum of Law submitted to buttress its proposed findings of fact, a perusal of the "Discussion" section therein fails to uncover any reference to or elaboration upon the Statute of Frauds and its impact on the appellee's case. See Record Nos. 29 and 30.

1. Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1.

With the Chancellor's May 9, 1988, order (decree nisi) precluding the appellant from opening a pharmacy, sixteen timely exceptions to the findings of fact and conclusions of law of the Chancellor were presented for his scrutiny. There were but two issues sought to be reviewed by the appellant, as is evidenced from its brief submitted along with its exceptions to the decree nisi order; to-wit:

III   Issues Presented

(a) Has the Plaintiff established all of the elements of equitable estoppel by clear and convincing evidence.

(b) Did the Court improperly find that the plaintiffs [sic] repetative [sic] violation of its lease constituted a de minimus infractions [sic], as such the defense of unclean hands was not applicable.

See page 2, Record No. 37.   Accord Plaintiff's Brief Contra Defendant's Exceptions to Adjudication at page 2, Record No. 39; Chancellor's Opinion Sur Exceptions at page 2, Record No. 45.

It was not until eight months *after* the decree nisi order was entered and the original exceptions had been filed that the appellant presented a "Reply and Supplemental Brief" wherein it raised the Statute of Frauds as an argument *and* extensively discussed its merits to undermine the relief granted the appellee.   See Record No 41.   As to how and why the court below treated the issue under discussion we learn from its opinion at page 2 that:

Defendant ... filed sixteen exceptions to the adjudication and decree nisi which in its brief distilled to two main issues. *A third issue [relating to the Statute of Frauds] was addressed at oral argument and I write now in response to the three issues before me.*

(Emphasis added)

Rule 227.1 is quite explicit as to the conditions precedent which must be satisfied to preserve issues for review and the time-frame within which such action need be taken to avoid having a claim deemed "waived", *save where leave of court is granted upon cause shown to specify additional grounds.*

There is no indication of record that the appellant submitted its challenge timely to the Chancellor's May 9, 1988, decree nisi on the basis of the Statute of Frauds. Additionally, no leave of court was obtained to avoid the rigors of the "waiver" provisions specified in subsection (b)(2) of Rule 227.1. Thus, the issue and the grounds in support of it would normally be held to have not been preserved for our assessment.

And, the fact that the court below permitted the appellant to raise the Statute of Frauds issue at post-trial oral arguments would not save the issue from falling prey to the waiver doctrine, *cf. Commercial Credit Corp. v. Cacciatiore,* 343 Pa.Super. 430, 495 A.2d 540 (1985); *Commonwealth v. Santana,* 321 Pa.Super. 299, 468 A.2d 488 (1983), for to hold thusly would be tantamount to paying mere lip-service to our Rules of Civil Procedure. See *Vorhauer v. Miller,* 311 Pa.Super. 395, 457 A.2d 944 (1983). Nonetheless, there has been a shift in this Court's approach to dealing with issues not timely filed below but addressed, nevertheless, by the trial court on their merits (without leave of court being sought and granted in advance of submission).

For example, in *Commonwealth v. Hewett,* 380 Pa.Super. 334, 551 A.2d 1080 (1988), a panel of this Court did not find an issue waived even though it was raised in supplemental post-trial motions without the benefit of leave of court being obtainedjas required by Pa.R.Crim.P. 1123(a). We did so on the strength of the Supreme Court's reversal of Superior Court treating as waived an issue raised for the first time in supplemental post-trial motions without leave of court being obtained beforehand because the *trial court elected to treat the issue on its merits.* Reliance was had upon the Supreme Court's per curiam reversal order in *Commonwealth v. Sheaff,* 518 Pa. 655, 544 A.2d 1342 (1988), of this Court's panel decision finding waiver in *Commonwealth v. Sheaff,* 365 Pa.Super. 613, 530 A.2d 480 (1987). Accord *Commonwealth v. Markovich,* 388 Pa.Super. 244, 248, 565 A.2d 468, 470 (1989); cf. *Kurtas v.*

*Kurtas,* 521 Pa. 105, 109, 555 A.2d 804, 806 (1988) (plurality). As such, we will respond to the appellant's claim that the Statute of Frauds precluded the court below from restricting the use it made of its leased premises. In doing so, we would note that the issue is preserved not solely because of its appearance in the appellant's post-trial supplemental brief. Rather, we address the question because of its presence in the supplemental brief, counsel's oral argument on the issue before the trial court *and* the trial court exercising its discretion to address the Statute of Frauds matter. Cf. *Weir by Gasper v. Estate of Ciao,* 521 Pa. 491, 556 A.2d 819 (1989).

■ The purpose of the Statute of Frauds is to prevent the enforcement of unfounded fraudulent claims by requiring the contracts pertaining to interests in real estate be supported by written evidence. *Haines v. Minnock Const. Co.,* 289 Pa.Super. 209, 216, 433 A.2d 30, 33 (1981).

■ At bar, there is no disputing the fact that the appellant's oral promise not to open a pharmacy on its leased premises does not meet the requirements of the Statute of Frauds. However, as pointed out by the court below and asserted by the appellee to us, the promise is enforceable by estoppel under the Restatement of Property, § 524, which provides in part as follows:

> An oral promise or representation that certain land will be used in a particular way, though otherwise unenforceable, is enforceable to the extent necessary to protect expenditures made in reliance upon it.

In *Haines,* supra, Section 524 was utilized to enforce (via an injunction) a seller's verbal promise to a buyer of real estate not to build in the open space behind the townhouse being purchased by her.

The *Haines* Court wrote that the record amply supported the finding of the Chancellor that the buyer justifiably relied on the seller's express promise that the space behind her townhouse would remain open and she had expended a

substantial amount of money in purchasing the property because of her reliance upon the seller's promise.

The appellant attempts to distinguish *Haines* on the grounds that contractual privity existed between the parties there, a factor missing instantly, and that *Haines* has been given only a limited and narrow application in *Burns v. Baumgardner*, 303 Pa.Super. 85, 95–96, 449 A.2d 590, 595 (1982).[2]

We disagree with the appellant that a contract must exist initially between the parties in order to bring into play the doctrine of equitable estoppel. It must be remembered that the doctrine's objective is to prevent the perpetuation of an injustice upon one claiming its benefits. See, *e.g., Zvonik v. Zvonik*, 291 Pa.Super. 309, 317–316 n. 5, 435 A.2d 1236, 1240–41 n. 5 (1981) (promissory estoppel). This precept is exemplified quite strikingly in the Supreme Court's decision in *Big Mountain Improvement Company's Appeal*, 54 Pa. 361 (1867), wherein the defendant was foreclosed from asserting the Statute of Frauds to the plaintiff's estoppel argument entitling him to repel the defendant's efforts to eject him from real estate.

Although the Court found that a parol contract avoiding the Statute of Frauds as to an exchange of land was not proven by the plaintiff with the defendant, the case was not at an end. The more pressing question was whether the defendant accepted "other land" in exchange for that taken by the plaintiff or encouraged the plaintiff so that the latter expended money and labor on the faith of such an oral agreement and promise "as would render it inequitable and a fraud upon him to permit the defendant to revoke its promises and disturb his possession." The Court found in favor of the plaintiff and it did so using language which we find instructive; to-wit:

**2.** *Haines* was cited with approval by the Supreme Court of Pennsylvania in *Petry v. Tanglwood*, 514 Pa. 51, 58 n. 10, 522 A.2d 1053, 1056 n. 10 (1987) for permitting an injunction to be issued to prohibit construction of additional townhouses in violation of a promise not to do so.

... whenever a party has induced another to repose upon the faith of his promise, though verbal, to expend his money or labor, for which he can only be remunerated by the enjoyment of the thing so promised, equity will compel the promissor to give the thing so promised, equity will compel the promissor to give such a deed or writing as shall be requisite to secure the promissee.

\* \* \* \* \* \*

... a party by whose encouragement expenditures have been made [or forbearance had] to such extent as are not capable of reimbursement except by enjoyment, will be enjoined from disturbing possession. Equity estops him because he would wrong the other party by withdrawing his consent[.] There is no higher morality than is contained in the equitable principle that where between two innocent parties a loss occurs, it is to be borne by him whose act occasioned it. The morality of the rule which throws the loss upon him who occasions it, is certainly much less questionable where it results from bad faith or fraud. The result is the same; the protection of the innocent being the object of the rule in both cases. We agree ... that the defendant[ ] should be estopped ... from proceeding in the action of ejectment against the plaintiff.

54 Pa. at 371 & 372 (Citation omitted).

■ In light of the equitable principles espoused by the Supreme Court in *Big Mountain*, supra, and this Court in *Haines*, supra, we will not permit the appellant to profit from its remarks and leave the appellee without any recourse in the face of the Chancellor's finding of fact that a promise not to compete was made by the appellant, and this induced the appellee to terminate a lease agreement that would have afforded him an alternate store site within three blocks of his present location.

At the hearing below, the appellee testified that, presently, he would not be able to relocate to a comparable site and this would cause him to go out of business if the appellant's promise were not enforced.

As made reference to by the court below in its opinion, at pages 8–9, on the issue posed:

In *Burns v. Baumgardner*, [supra], the Court did not overturn the *Haines* holding but rather found it was unreasonable under the facts before it to impose use restrictions on an entire 175 acre tract.

In the instant case, it is clear that there was no writing assigned by the parties regarding defendant's promise to plaintiff. The requirements of the Statute of Frauds were, therefore, not met. However, there is authority, under *Haines*, to enforce defendant's promise not to open a pharmacy in its Shop Rite Supermarket. As the evidence proved that the plaintiff reasonably relied on the defendant's promise, and renewed its own lease in reliance on said promise, the injunction against the defendant will not be disturbed.

We affirm the court's determination to apply the doctrine of equitable estoppel to restrain the appellant from competing with the appellee during the term of the ten-year lease.

The second averment postulated and preserved by the appellant is one of "Whether Appellee proved all of the elements of an equitable estoppel by clear, precise and unequivocal evidence." See Appellant's Brief at page 3. We find he did so.

Equitable estoppel, as correctly observed by the court below, is a doctrine that prevents one from doing an act differently from the manner in which another was induced by word or deed to expect. See *Zvonik v. Zvonik*, supra; *Council of Plymouth Township v. Montgomery County*, 109 Pa.Cmwlth. 616, 531 A.2d 1158 (1987). Its essential elements are inducement and justifiable reliance on that inducement exhibited by a change in condition (to one's detriment). *Cosner v. United Penn Bank*, 358 Pa.Super. 484, 517 A.2d 1337 (1986). One who asserts equitable estoppel must prove the elements by clear, precise and unequivocal evidence. *Blofsen v. Cutaiar*, 460 Pa. 411, 333 A.2d 841 (1975).

Our review of the three-day hearing transcript is support-ive of the lower court's determination, on pure credibility grounds (which is not reversible on appeal unless not but-tressed by the record) that the appellee was induced to renew his lease with Enal by Greenblatt's remarks: "... we have no intention of opening a pharmacy". As written by the court below on this point:

> I found as a fact Mr. Zukin credible and Mr. Greenblatt not credible when he denied making such a statement [—"we have no intention of opening a pharmacy"—]. The qualifying statement "not at this time" apparently first was uttered in 1986, several years after plaintiff relied on defendant's unqualified statement and signed his lease renewal. Mr. Zukin testified regarding Mr. Greenblatt's statements in 1986 when, during a meeting, Mr. Greenblatt was questioned by plaintiff's attorney about discussions in 1983. Mr. Zukin testified that in *1986*, by stating that he said in 1983 that the defendant had no intention of opening a pharmacy and added that he also said "not at this time." The statements of Mr. Greenblatt in 1986 in no way establish that the plaintiff did not prove the elements of equitable estoppel based on the statements of 1983. Plaintiff proved that in 1983 Mr. Greenblatt represented to Mr. Zukin that defendant had no intention of opening a pharmacy and, in reliance on this unqualified statement, plaintiff renewed its lease for an additional ten years. The elements of the doctrine were proved by clear and unequivocal evidence and any statements made three years after Mr. Zukin's justifiable reliance simply will not afford defendant the relief it requests.

(Chancellor's Opinion at pages 4–5) We see no reason to disturb the court's order enjoining the appellant from open-ing a pharmacy in property adjacent to its supermarket in competition with the appellee during the lease's ten-year term and executed by the appellee with Enal on the strength of the remarks of appellant's representative that a

competing pharmacy in the shopping center housing the two litigants would not be opened.

Order affirmed.