433 A.2d 30

**Christina L. HAINES, Appellee,**

**v.**

**MINNOCK CONSTRUCTION COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued April 15, 1980.

Filed July 24, 1981.

T. Lawrence Palmer, Pittsburgh, for appellant.

George E. McGrann, Pittsburgh, for appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

CAVANAUGH, Judge:

During the winter of 1974 the appellee, Christina L. Haines, who at that time was unmarried, visited a development of townhouses known as Sewickley Heights Manor, which were then being constructed by the appellant, Minnock Construction Company. At that time the first buildings in the development were going up. Appellee, whose name then was Christina L. Karol, again visited the site in the fall of 1974. She was very favorably impressed with the wooded area surrounding the townhouse that she contemplated purchasing. She talked to the appellant's project manager, Pat Deigan and to another of appellant's employees, Mary Jane Call, during the several visits that she made to Sewickley Heights Manor. Appellee was particularly interested in a quiet and private area in which to purchase a townhouse. She was an airline flight attendant and since she worked at unusual hours, and therefore slept at hours other than the usual times for sleeping, she did not want to be disturbed by the comings and goings of workers keeping more conventional hours. She was shown the site where building 8 was being constructed which ultimately contained the townhouse that she purchased and she was struck by the beauty of the heavy woods located in back of the building. The building contained six townhouses and the area behind it contained tall cherry trees, many birds and animals such as raccoons and an occasional deer. Appellant was also given pamphlets by Mary Jane Call which described the development. The residential area guide stated "Sewickley Heights Manor quietly sits on one hundred fifteen acres of heavily wooded, rolling Pennsylvania hills. Our land planners sensitively designed the entire area to enhance its natural and rustic beauty. And due to the wooded character of the land, each condominium grouping sets back, privately shaded from its neighbor... Even the single access road is purposely designed to maintain privacy, eliminate traffic congestion and add to the forest atmosphere." Another of the brochures given to appellant described the area as follows:

This is a fresh and special place where coming home is a whole new way of living. Your townhouse sets back, nestled in the beauty of its own tree shaded private land. All the areas [sic] natural charm has been preserved. We left untouched the generous and quiet forest.

Apparently the brochures given to the appellee did not exaggerate in their description of the natural beauty of the place.

Appellee was given a "residential area guide" by one of appellant's agents and the guide stated directly behind building 8, the building containing appellant's townhouse which was numbered as 803, the words "open space". Appellee inquired whether this would remain open space and was assured by the project manager that it would so remain. Relying on the appellant's promise that the area behind building 8 would remain as open space appellee purchased her townhouse, unit 803, and made settlement on July 30, 1975.

Appellee's townhouse was part of what was known as Addition II and eventually Addition III and subsequent additions were constructed. By the time of the hearing in this case in the court below some ten additions had been completed.

Addition III was submitted for approval to the commissioners of Aleppo Township on June 10, 1975 and plans for it were recorded in the office of the Recorder of Deeds on September 8, 1975. Addition III provided for construction of buildings 17 and 18 which have since been constructed and to which appellee has no objection. The three separate buildings 8, 17 and 18 each contain townhouses and the three buildings form a "U" with building 8 constituting the right side of the "U", building 18 the bottom, and building 17 the left side. The open space that appellee is desirous of maintaining is in the middle of the "U". The papers filed in connection with Addition III also show the offending building No. 20 which it is contemplated will contain townhouses and which appears in the middle of the "U".

From the time appellee took possession of her townhouse on July, 1975, until about January, 1979, the open space behind the townhouse remained in its natural state. In January, 1979, rumors started in Sewickley Heights Manor that another townhouse would be built in the open space by the appellant. The rumors proved correct and around April 1, 1979, appellant's construction crews commenced staking out the property and leveling trees in preparation for constructing building No. 20 and also a commercial building. It became clear to the appellee that the sylvan setting that she and her husband (appellee having married after purchasing the townhouse) had enjoyed would soon be destroyed or at least substantially diminished. Appellee commenced an action in equity seeking an injunction. On May 9, 1979, a preliminary injunction was entered restraining appellant (defendant in the court below) from construction of dwelling units or commercial buildings on Sewickley Heights Drive behind the plaintiff's dwelling and located within the "U". After an extended hearing before McKenna, J., a final decree was entered which permanently enjoined the appellant from clearing the area behind the appellee's townhouse or further constructing or otherwise interfering with the area designated on the "residential area guide" as open space. The decree further directed that appellant convey to the Sewickley Heights Manor Homes Association the land situated in the open space as designated on the "Residential Area Guide". The decree also sets forth the legal description of the land involved. From this final decree the appellant has appealed to this court.

Appellant contends that the promise to leave the land behind the appellee's townhouse as open space is barred by the Statute of Frauds. The Act of March 21, 1772, 1 Sm.L. 389 § 1, 33 P.S. § 1, provides:

From and after April 10, 1772, all leases, estates, interests of freehold or term of years, or any uncertain interest of, in, or out of any messuages, manors, lands, tenements or hereditaments, made or created by livery and seisin only, or by parol, and not put in writing, and signed by the

parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol leases or estates, or any former law or usage to the contrary notwithstanding; except, nevertheless, all leases not exceeding the term of three years from the making thereof; and moreover, that no leases, estates or interests, either of freehold or terms of years, or any uncertain interest, of, in, to or out of any messuages, manors, lands, tenements or hereditaments, shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing, or by act and operation of law. 1772, March 21, 1 Sm.L. 389, § 1.

 Appellee claims an easement in appellant's land, which is "a liberty, privilege or advantage which one may have in the lands of another without profit. . . It may be merely negative . . . and may be created by a covenant or agreement not to use land in a certain way." *Slegel v. Lauer*, 148 Pa. 236, 240, 23 A. 996 (1892). *See also Clements v. Sannuti*, 356 Pa. 63, 51 A.2d 697 (1947). An easement is within the Statute of Frauds. *Yeakle v. Jacob*, 33 Pa. 376 (1859). The Statute of Frauds applies to an alleged oral agreement to limit the number of apartment houses, heights of buildings and number of dwelling units on a tract of land. *Overbrook Farms Club v. MacCoy*, 32 Pa.D. & C.2d 603 (Mont.1963).

 The Statute of Frauds is satisfied by the existence of a written memorandum signed by the party to be charged and sufficiently indicating the terms of the oral agreement so that there is no serious possibility of consummating fraud by its enforcement. *Keil v. Good*, 467 Pa. 317, 356 A.2d 768 (1976). Any number of documents can be taken together to make out the necessary written terms of the bargain provid-

ed there is sufficient connection made out between the papers, without the aid of parol evidence, further than to identify papers to which reference is made, but not to supply a material term of the contract. Volume 4, Williston on Contracts, Third Edition, page 128. *See also Dvorak v. Beloit Corp.*, 65 Pa.D. & C.2d 514, (Chester 1974). The purpose of the Statute of Frauds is to prevent the enforcement of unfounded fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence. We are satisfied in this case that there is no fraud involved in connection with appellee's claim that the appellant, through its agents, promised her that the land behind her property would remain as open space. Miss Deigan, the project manager, testified on cross examination that she told appellee that the open space behind her home would remain undeveloped and forested. We are not satisfied, however, that the strict requirements of the Statute of Frauds have been met in this case. The only writing prepared by the appellant in support of appellee's claim is the "Residential Area Guide" which has the words "open space" printed in proximity to the representation of the building containing appellant's townhouse. The agreement of sale entered into between appellant and appellee does not refer to this promise. " 'A writing signed by the parties is required, and even courts of equity, though dispensing with the form, firmly demand the substance.' " *Manley v. Manley*, 238 Pa.Super. 296, 307, 357 A.2d 641, 646 (1976).

Appellee argues that the requirements of the Statute of Frauds have been met. The court below did not rest its decision on the basis that the statue was complied with. Nor will we, as the writing in the "Residential Area Guide" pertaining to open space is too vague, and appellant's signature is lacking.

■ Finding that the oral promise to keep the area as open space has not met the requirements of the Statute of Frauds, does not mean that it may not be enforced as to the appellant. The promise is enforceable by estoppel, under the Restatement of Property, § 524, which provides in part as follows:

## § 524. PROMISES ENFORCEABLE BY ESTOPPEL.

An oral promise or representation that certain land will be used in a particular way, though otherwise unenforceable, is enforceable to the extent necessary to protect expenditures made in reasonable reliance upon it.

*Comment*:

. . . . .

*b. Though otherwise unenforceable.* The phrase "though otherwise unenforceable" as here used means that the promise could not be enforced were it not for the application of the doctrines of estoppel. Some promises respecting the use of land do not come within the provisions of the Statute of Frauds. As to such promises the fact that they are oral is not material in respect to their enforcement.

*c. Promises by conveyors.* Not infrequently promises coming wholly or partly within the rule stated by the Section are made as a part of the negotiations leading to a sale of land to the promisee. To induce a prospective purchaser to buy, or to persuade him to buy subject to restrictions upon his use, the vendor will state that other land owned by him will be used or sold subject to like restrictions. Such promises not infrequently refer to a plat which indicates the restrictions. The promises may later be incorporated in the conveyance by specific language or by reference to a source such as a plat in which they may be found to exist in written form. If so, they become enforceable according to their tenor. Yet, even though not so incorporated, they can be enforced by the promisee if he reasonably relies upon them in purchasing or in making improvements upon the land after it is purchased.

In connection with these principles the Restatement gives the following illustration:

1. A conveys Blackacre to B by a deed in which it is stipulated that the land conveyed shall be used only for dwelling house purposes. No promises respecting the use of other land of A are contained in the deed. A does,

however, own other land in the vicinity and, as an inducement to the purchase of Blackacre, he tells B that this other land will be sold subject to the same restriction to which B's land is to be subjected. In reasonable reliance upon this promise. B purchases. A may be enjoined from selling the other land free from the restriction.

*Miller v. Lawlor*, 245 Iowa 1144, 66 N.W.2d 267 (1954) follows the Restatement in a case similar to our own. In that case the seller of real estate verbally promised the buyer that he would not construct anything on the adjoining property which would interfere with the buyer's view. The seller also owned the adjoining property. The court held that the oral promises created an easement which were enforced on the basis of estoppel.

Under Section 524 of the Restatement of Property the grantee must reasonably rely on the promises of the grantor in order to render the promises enforceable. The appellee reasonably relied on the "Residential Area Guide" which showed open space behind the townhouse she proposed to buy, as well as on the verbal promises by appellant's agents that the space would remain open. There was testimony that the appellant had a scale model of the project in its sales office and that building 20 appeared on the model in its proposed location. The court below found as a fact that appellee did not see the proposed building 20 on the scale model and that she was not on notice of the proposed construction of the commercial building and the residential structure known as building 20. The chancellor's finding of fact, approved by the court en banc, having the force and effect of a jury's verdict if supported by adequate evidence. *Aiken Industries, Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808 (1978). The record amply supports this finding. The Declaration of Covenants, Conditions and Restrictions which appellant filed with the township in connection with Addition II and which was recorded on October 17, 1974, in the Office of the Recorder of Deeds had attached to it as Exhibit A a diagram which showed building 8 and to the rear of the building, but not directly behind it appear the words "commercial area." Exhibit B–2 attached to the

declaration shows building 8 containing 6 townhouses including 803 (appellee's townhouse) and there is no indication on this diagram of any commercial area in the vicinity of building 8. The Declaration of Covenants, Conditions and Restrictions and exhibits filed in connection with Addition II were not of such a character as to vitiate appellee's justifiable reliance on the appellant's express promise that the space behind her townhouse would remain open. As previously noted, the papers filed in connection with Addition III did show the existence of building 20. However, these documents were not recorded until after settlement was made on appellee's townhouse.

Appellee was particularly interested in the townhouse she purchased because of its wooded charm and beauty and she had every reason to expect that it would remain that way. Appellee made the substantial expenditure involved in purchasing the townhouse because of her reliance on the promise that the open space would remain in that condition.

■ Appellant also contends that appellee's claim is barred by the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, 53 P.S. § 10706 which provides in part as follows:

(1) The provisions of the development plan relating to (i) the use, bulk and location of buildings and structures, (ii) the quantity and location of common open space, except as otherwise provided in this article, and (iii) the intensity of use or the density of residential units, shall run in favor of the municipality and shall be enforceable in law or in equity by the municipality, without limitation on any powers of regulation otherwise granted the municipality by law.

(2) All provisions of the development plan shall run in favor of the residents of the planned residential development but only to the extent expressly provided in the development plan and in accordance with the terms of the development plan, and to that extent said provisions, whether recorded by plat, covenant, easement or otherwise, may be enforced at law or equity by said residents acting individually, jointly, or through an organization

designated in the development plan to act on their behalf; provided, however, that no provisions of the development plan shall be implied to exist in favor of residents of the planned residential development except as to those portions of the development plan which have been finally approved and have been recorded.

The Pennsylvania Municipalities Planning Code refers to provisions of the development plan which shall be implied to exist in favor of the residents. In this case we are dealing with express promises by appellant upon which the appellee relied and the Pennsylvania Municipalities Planning Code does not bar the appellee.

■ The court below properly enjoined the appellant from clearing or further constructing or otherwise interfering with the area behind the residence of the appellee and designated in the "Residential Area Guide" as "open space." However, it erred in ordering the appellant to convey to the Sewickley Heights Manor Homes Association all of the land which appellant owns and which is situated in the open space, and designated as lot Nos. 2001, 2002, 2003, and 2004 in the Sewickley Heights Manor Addition III. The Court also erred in directing that the appellant convey all of its land which it presently intends to use in a commercial manner to the Sewickley Heights Manor Homes Association which land is situated in the open space as designated on the Residential Area Guide. The appellant did not promise the appellee that such a conveyance would be made nor did she seek such a conveyance. Appellee is adequately protected by the permanent injunction without the further necessity of compelling the appellant to convey this real estate to the Sewickley Heights Manor Homes Association without compensation. The general rule is that equity does not favor a forfeiture even if called for in an agreement. See *Warfield v. Kelly*, 262 Pa. 482, 106 A. 72 (1919); *Pennsylvania-Ohio Gas Company v. Franks' Heirs*, 322 Pa. 233, 185 A. 280 (1936).

The Declaration of Covenants, Conditions and Restrictions, in appellant's exhibit 3 sets forth a legal description of common properties to be conveyed by the appellant to Sew-

ickley Heights Homes Association in connection with Addition II. The description does not include the "open space" within the "U" of buildings, one of which contains appellant's townhouse. The Declaration of Covenants, Conditions and Restrictions given to appellee states under Definitions:

Common Properties shall mean all real property owned by the Association for the common use and enjoyment of the Owners. The common Property to be owned by the Association at the time of the conveyance of the first lot is described in exhibit 'C–1' attached hereto.

The decree of the court below went farther than necessary to protect the legitimate property interests of appellee. The enforceable promise by appellant to appellee is fulfilled as long as appellant does not change the land any further or construct any buildings within the open space behind appellee's townhouse while appellee remains a resident in unit 803 in building 8.

The final decree of June 8, 1979 entered by the court below is amended by deleting those paragraphs of the decree which direct the appellant to convey portions of its real estate to the Sewickley Heights Manor Homes Association. In all other respects the decree is affirmed.

Decree affirmed in part and reversed in part.