David W. STRAUSSER, Appellant

v.

PRAMCO, III & Manufacturers and Traders Trust Co., t/d/b/a M&T Bank.

Superior Court of Pennsylvania.

Submitted Nov. 13, 2007.

Filed March 3, 2008.

Michael Fiorillo, Pottsville, for appellant.

William J. Levant, Blue Bell, for PRAMCO, appellee.

Morton R. Branzburg, Philadelphia, for Manufacturers and Traders, appellee.

BEFORE: FORD ELLIOTT, P.J., HUDOCK and POPOVICH, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Appellant appeals from the order sustaining the preliminary objections of appellee Manufacturers and Traders Trust Company ("M&T"), and dismissing appellant's amended complaint. By a separate prior order dated October 23, 2006, the trial court had earlier also sustained the preliminary objections of PRAMCO III, LLC ("PRAMCO") and dismissed the complaint as to that entity. On appeal, appellant raises several issues of trial court error as to both appellees. Finding no error, we affirm.

¶ 2 On November 21, 1997, appellant entered into a loan agreement with Pennsylvania National Bank and Trust Company, the predecessor-in-interest to both appellees. The loan was secured by a mortgage for property located at 429–431 E. Market Street, Pottsville, and by a 1997 Chevrolet Conversion Van. On March 23, 1998, appellant entered into a second loan agreement with Pennsylvania National Bank and Trust Company, securing this agreement with a mortgage on property located at 427 E. Market Street, Pottsville. On October 7, 2000, M&T became the successor-in-interest to Pennsylvania National Bank and Trust Company.

¶ 3 By January 6, 2003, appellant had fallen behind on his payments on both loans. On that date, appellant was in an automobile accident in which he destroyed the vehicle which was partial collateral for the 429–431 E. Market Street loan. The insurer of the vehicle issued a check to M&T. Appellant claims that M&T at first agreed to hold the check pending appellant's contesting the value with the insurer; but on January 5, 2004, M&T notified appellant that it had cashed the check and applied the proceeds to both mortgages. Thereafter, appellant retained counsel and began to negotiate with M&T to either refinance the 429–431 E. Market Street loan, or find a new lender.

¶ 4 In December 2004, appellant attempted to sell the 427 E. Market Street property. According to appellant, M&T informed the title company that there was a cross-collateralization agreement as to the two loans and that it would not release its lien on 427 E. Market Street without full satisfaction of the 429–431 E. Market Street mortgage. Although appellant claims that no such cross-collateralization agreement in fact existed, the parties eventually agreed that appellant would pay $1,000 toward the 429–431 E. Market Street loan and M&T would allow the sale of the 427 E. Market Street property to go forward. The sale occurred in January 2005, and the 427 E. Market Street mortgage was satisfied.

¶ 5 Appellant claims that at a meeting on February 5, 2005, the parties reached an agreement whereby appellant would begin making payments of $300 per month which would be applied against the principal of the remaining loan and that the loan would be refinanced. In the next several months, appellant made monthly payments of $300 to M&T. In October 2005, appellant received a statement from M&T that indicated that his $300 payments were no longer being credited to the principal and that his account was instead accruing interest and late fees.

¶ 6 On October 27, 2005, M&T sold appellant's loan to PRAMCO. On May 11, 2006, PRAMCO instituted a mortgage foreclosure action against the 429–431 E. Market Street property. On August 1, 2006, appellant responded by filing an answer, new matter, and counterclaim asserting various causes of action including breach of contract, negligence, and fraud and misrepresentation against M&T and PRAMCO. In response to preliminary objections by M&T and PRAMCO, which indicated that appellant's *in personam* claims were inappropriate under an *in rem* foreclosure action, appellant filed a similar, but separate, complaint at the instant trial court docket number.

¶ 7 On September 13, 2006, PRAMCO filed preliminary objections in the nature of a demurrer, alleging, *inter alia,* that because the complaint, which contained an underlying claim that the parties had an agreement to forbear on foreclosure, failed to allege the existence of a *written* agreement, the Statute of Frauds would prevent proof of the matter and would thereby bar

any recovery. On October 23, 2006, the court sustained PRAMCO's preliminary objections and dismissed the complaint as to PRAMCO.

¶ 8 On October 30, 2006, M&T also filed preliminary objections in the nature of a demurrer which raised the same Statute of Frauds claim. The court directed appellant to file a more specific complaint and attach a document confirming the existence of a written forbearance agreement. Appellant thereafter filed an amended complaint; and on January 29, 2007, M&T renewed their preliminary objections, again asserting the lack of a written forbearance agreement. On May 10, 2007, the trial court sustained the preliminary objections and dismissed the amended complaint. Appellant now appeals.

¶ 9 On appeal, appellant argues that the trial court erred in sustaining the preliminary objections of both appellees because there exists a genuine issue of fact whether the parties entered into an agreement to forbear on foreclosure. Appellant maintains that documents attached to the amended complaint evidence such an agreement. Appellant further contends that the Statute of Frauds is inapplicable on theories of part performance and/or equitable or promissory estoppel. Finally, appellant asserts that the trial court erred in dismissing his fraud and misrepresentation claims on the basis of the "Gist of the Action Doctrine."

¶ 10 Preliminarily, we must dispose of a motion to quash appellant's appeal, as to PRAMCO, presented by PRAMCO in its appellate brief. PRAMCO previously raised this matter in an application to quash, filed July 23, 2007, which was denied without prejudice to raise the matter before the merits panel. Citing *General*

*Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970), PRAMCO contends that appellant cannot assail the trial court's ruling in its favor in the appeal taken from the May 10, 2007 order sustaining M&T's preliminary objections. Essentially, *General Electric* stands for the principle that taking one appeal from separate judgments is not acceptable practice and is discouraged. PRAMCO maintains that under *General Electric,* although appellant could not do so until May 10, 2007, appellant at that time still had to file a separate notice of appeal from the order of October 23, 2006, which sustained PRAMCO's preliminary objections, in order to appeal any issues arising from that adjudication. We disagree.

■ ¶ 11 This court later distinguished *General Electric* in *Baker v. Cambridge Chase, Inc.,* 725 A.2d 757 (Pa.Super.1999), *appeal denied,* 560 Pa. 716, 745 A.2d 1216 (1999). *Baker* found that the general principle of *General Electric* did not apply in a situation where multiple defendants in a single action, who were all original defendants, were removed from the case in piecemeal fashion by separate preliminary objections. Rather, in such a situation, each separate judgment becomes appealable when the suit is resolved against the final defendant [1] and may be commenced as to all defendants by a single notice of appeal taken from the order resolving the final claim against the final defendant. As that situation obtains here, we find that the present appeal is proper as to PRAMCO and will not be quashed as to that appellee.

¶ 12 We begin our analysis with our well-settled standard of review:

---

1. An appeal may not be filed earlier because of the rule that an order is not considered final and appealable unless it disposes of all claims and all parties. Pa.R.A.P. 341(b)(1), 42 Pa.C.S.A.; *K.H. v. J.R.,* 573 Pa. 481, 826 A.2d 863 (2003).

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true. In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case if [sic] free and clear of doubt.

*Excavation Technologies, Inc. v. Columbia Gas Company of Pennsylvania,* 936 A.2d 111, 113 (Pa.Super.2007).

¶ 13 An agreement to forbear from foreclosure, between mortgagor and mortgagee, has been held to represent an interest in land such that the agreement is subject to the Statute of Frauds and must be in writing. *Atlantic Financial Federal v. Orianna Historic Associates,* 406 Pa.Su-

**2.** Appellant attempts to distinguish *Atlantic Financial* on inconsequential factual grounds that fail to deflect the main thrust of the case

per. 316, 594 A.2d 356 (1991).[2] In his first argument on appeal, appellant asserts that the Statute of Frauds may be satisfied in this case by something other than a direct written agreement; that is, other written documents that evidence the existence of such an agreement. To this end, appellant attached several documents to his amended complaint that he claims evidence the existence of an agreement to forbear foreclosure.

■ ¶ 14 We agree with appellant that the writing requirement of the Statute of Frauds can be satisfied by the amalgam of multiple documents:

> The Statute of Frauds is satisfied by the existence of a written memorandum signed by the party to be charged and sufficiently indicating the terms of the oral agreement so that there is no serious possibility of consummating fraud by its enforcement. *Keil v. Good,* 467 Pa. 317, 356 A.2d 768 (1976). Any number of documents can be taken together to make out the necessary written terms of the bargain provided there is sufficient connection made out between the papers, without the aid of parol evidence, further than to identify papers to which reference is made, but not to supply a material term of the contract. Volume 4, Williston on Contracts, Third Edition, page 128. *See also Dvorak v. Beloit Corp.,* 65 Pa.D. & C.2d 514 (Chester 1974). The purpose of the Statute of Frauds is to prevent the enforcement of unfounded fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence.

*Haines v. Minnock Construction Co.,* 289 Pa.Super. 209, 433 A.2d 30, 33 (1981).

which is that an agreement not to foreclose must be in writing.

¶ 15 Upon review, however, we find that the attached documents actually indicate that there was no such agreement. We find only one document that hints at the existence of any agreement between the parties as to foreclosure. In a February 4, 2004 letter from appellant's counsel to M&T, counsel informs M&T that he represents appellant and understands that an agreement had been reached that the loan would either be refinanced or another lender would be found so that the loan would not go into foreclosure. However, an August 9, 2004 letter from the same counsel to M&T requests "a compromise of this interest in the context of a refinancing of the loan." An October 15, 2004 letter from counsel to M&T requests an opportunity to discuss the outstanding loan and freely admits, "I do not believe that we have reached any type of consensus or agreement...." A letter from counsel to M&T dated February 16, 2005 requests an opportunity to discuss refinancing the loan. Finally, there is a November 7, 2005 letter from counsel to PRAMCO, the new owner of appellant's obligation, in which counsel informs PRAMCO that appellant was involved in negotiations with M&T regarding the loan, but makes no claim of the existence of an agreement to forbear from foreclosure. Clearly, all of these writings attest to the fact that there was no forbearance agreement.

¶ 16 The attachments to the amended complaint do include several account statements from M&T that show appellant was making regular payments of $300 per month on the loan and that M&T was applying these payments to the principal of appellant's loan. Essentially, it is appellant's position that the existence of these payments, coupled with the fact that M&T "took no steps to foreclose on [appellant] for approximately 4 years is clear and convincing evidence of the existence of the agreement to both forebear [sic] and refi-

nance." (Appellant's brief, section VII, part B.) We disagree. This may be no more than evidence of a lender attempting to accommodate a struggling homeowner. We see no abuse of discretion or error of law in the trial court's finding of no written agreement based upon the documents attached to appellant's amended complaint.

¶ 17 Appellant next contends that part performance will take an agreement out of the Statute of Frauds, citing *Eastgate Enterprises, Inc. v. Bank and Trust Company of Old York Road,* 236 Pa.Super. 503, 345 A.2d 279 (1975). Appellant contends that his payments of $300 per month and M&T's acceptance thereof constitutes part performance and takes the alleged agreement out of the purview of the Statute of Frauds. We disagree.

¶ 18 As appellees have indicated in their briefs, the notion that part performance may take an agreement out of the Statute of Frauds has arisen in agreements pertaining to the sale or leasing of real estate:

Our case law is very explicit as to the requirements which must be met to take an oral contract for real estate out of the statute. The terms of the contract must be shown by full, complete, and satisfactory proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and, at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust.

*Kurland v. Stolker,* 516 Pa. 587, 592, 533 A.2d 1370, 1373 (1987).

¶ 19 Appellant has not cited any case involving a contract to forbear foreclosure that was taken out of the Statute of Frauds by part performance and we are aware of none. Moreover, as just noted in *Kurland,* the part performance must be of such a nature that "could not be compensated in damages, and such as would make rescission inequitable and unjust." The part performance advanced here by appellant, monthly payments of $300, is compensable in damages. We see no merit here.

 ¶ 20 Appellant next attempts to argue that either equitable or promissory estoppel somehow avoids the application of the Statute of Frauds to the alleged forbearance agreement. Appellant's brief, however, merely sets out the elements of the respective doctrines of equitable and promissory estoppel without ever describing how the doctrines apply to the facts of this case. We find the issue waived. Moreover, the doctrine of estoppel simply cannot be invoked against the operation of the Statute of Frauds. *Borrello v. Lauletta,* 455 Pa. 350, 317 A.2d 254 (1974); *Target Sportswear, Inc. v. Clearfield Foundation,* 327 Pa.Super. 1, 474 A.2d 1142 (1984).

¶ 21 In his final issue, appellant complains that the trial court improperly dismissed all counts of his amended complaint under the "Gist of the Action Doctrine." Appellant argues that his claims of fraud and misrepresentation were viable independently from his breach of contract claim.

 ¶ 22 This court has recently described the gist of the action doctrine:

The gist of the action doctrine acts to foreclose tort claims: 1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. *Hart v. Arnold,* 884 A.2d 316, 340 (Pa.Super.2005), *citing eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 19 (Pa.Super.2002). The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.' *Hart* at 339, *quoting Pittsburgh Constr. Co. v. Griffith,* 834 A.2d 572, 581–582 (Pa.Super.2003), *allocatur denied* 578 Pa. 701, 852 A.2d 313 (2004).

*Reardon v. Allegheny College,* 926 A.2d 477, 486–487 (Pa.Super.2007).

¶ 23 Instantly, appellant's negligence count (Count II) alleged that M&T breached a duty to properly supervise its employees in that their employee engaged in fraud and misrepresentation as set out in a latter count (Count IV). Thus, the negligence count is derived wholly from the fraud and misrepresentation count and will necessarily be properly dismissed under the gist of the action doctrine if that latter count is also. We, indeed, do find that Count IV of the amended complaint, pertaining to fraud and misrepresentation, was properly dismissed under the gist of the action doctrine.

¶ 24 Count IV identified four instances of misrepresentation: 1) that the loan would be refinanced; 2) that M&T would hold the insurance check on appellant's wrecked van; 3) that M&T induced the insurer to make the check payable to M&T only; and 4) that M&T improperly induced

appellant, by way of a non-existent cross-collateralization agreement, to pay $1,000 from the sale of the 427 E. Market Street property toward the loan on 429–431 E. Market Street. All of these alleged misrepresentations are directly related to the underlying contractual rights and obligations of the parties as defined by the loan agreements and mortgages between them, and all of them can be resolved only through a determination of those contractual rights and obligations.

¶ 25 For instance, the fourth alleged misrepresentation does not make out a case of fraud because appellant was already contractually obligated to pay M&T at least $1,000 on the 429–431 E. Market Street loan. As appellant's brief indicates, the law requires a loss or injury arising from reliance upon a misrepresentation in order to make out a claim for fraud. *Gruenwald v. Advanced Computer Applications, Inc.,* 730 A.2d 1004 (Pa.Super.1999). Here, however, there was no loss or injury because of the underlying contractual relationships of the parties. Appellant paid no money to M&T that he did not already owe, and the sale of the 427 E. Market Street property went through as appellant desired. All of the other misrepresentations are the same, being directly related to underlying contractual relationships. The trial court properly dismissed these counts because the gist of the action at trial was in contract.

¶ 26 Accordingly, having found no merit to appellant's arguments on appeal, we will affirm the order below.

¶ 27 Order affirmed.