J-S34045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| EDWARD AND VICKI SZCZEPKOWSKI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 691 MDA 2025 |
| METROPOLITAN EDISON COMPANY AND BARBARA L. STEVENS | : | |

Appeal from Order Entered November 27, 2024
In the Court of Common Pleas of Berks County
Civil Division at No. 17-16924

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: FEBRUARY 26, 2026**

Edward and Vicki Szczepkowski (Appellants) appeal from the November 27, 2024 order which made final an earlier order entered on May 25, 2018, granting partial summary judgment in favor of Metropolitan Edison Company (Met-Ed) and Barbara L. Stevens[1] (collectively, Appellees).[2]  Together, the

---

[1] Barbara L. Stevens is an employee of Met-Ed.  **See** Appellees' Answer to Appellants' Complaint with New Matter and Counterclaim at ¶ 71 (stating that "[Barbara L.] Stevens was employed by … [Met-Ed] from September of 2012 through present").

[2] This case was originally assigned to the Honorable Jeffrey K. Sprecher, who retired from the bench in June 2023.  On June 9, 2023, the case was transferred to the Honorable J. Benjamin Nevius.

orders disposed of all parties and resolved all claims in favor of Appellees.[3] Upon review, we affirm.

The parties' dispute concerns a utility easement (Easement) providing for the location and maintenance of electrical lines, poles, and related equipment. The Easement runs through Appellants' property, located in Cumru and Brecknock Townships, Berks County, Pennsylvania (Property). The Easement was created by a written agreement, dated April 18, 1923 (Easement Agreement), between Henry W. Hemmig (predecessor in interest to Appellants) and Met-Ed. The Easement Agreement was recorded in the land records of Berks County, Pennsylvania (Miscellaneous Book Number 96 at Page Number 319). *See* Appellees' Answer to Appellants' Complaint with New Matter and Counterclaim, Exhibit "A" at 1-2 (unnumbered).

The Easement Agreement provides in relevant part:

The Grantor hereby conveys to the Grantee its successors and assigns an easement, right, privilege and right of way of the width of 200 feet only applied through woodland, and where a tree falls within 200 feet of center line through cleared land, upon, over and across the lands of the Grantor situated in the Township of Cumru County of Berks State of Pennsylvania, described as follows:

Line enters land from land of Fitterling Estate, thence in a westerly course to Highway and land of Fitterling Estate, Bounded northerly, and southerly by other land of Grantor, easterly by

_____

[3] On July 23, 2025, Appellees filed an application to quash or dismiss this appeal based on their allegation that Appellants had untimely filed their Designation of the Reproduced Record. The application was deferred to this panel by per curiam order on August 15, 2025. We deny the application to quash or dismiss.

Fitterling Estate, westerly by Highway, and Fitterling Estate, Telephone poles to be paid for at a rate of one dollar per pole, and to be kept out of cultivated land, the exact location thereof to be selected by the Grantee after its final surveys have been made.

Together with the right to enter upon and erect, inspect, operate, replace, repair and perpetually maintain Two (2) parallel lines of "H" Frames, or One (1) "H" frame and One (1) tower line with necessary wires, cross arms, guy wires, push braces and other usual fixtures and appurtenances used or adopted for the transmission of electric current for light, heat, power or any other purposes. (Note: An "H" Frame is Two (2) pole structure, the poles being about thirteen (13) feet apart.)

Together also with the right to trim, cut and remove at any and all times such trees and underbrush as in judgment of the Grantee may interfere with or endanger said lines or any of their appurtenances when erected.

PROVIDED, however, any damage to the property of the Grantor, caused by the Grantee, its successors and assigns, in maintaining or repairing said transmission line, shall be borne by the Grantee, its successors and assigns.

RESERVING, however, to the Grantor the right to cultivate the ground between said poles and towers and beneath said wires, provided that such use shall not interfere with or obstruct the rights herein granted.

The Grantee agrees to pay and the Grantor agrees to accept in full satisfaction for the rights herein granted, the sum of ($30.00) per Double "H Frame ($25.00), per Tower ($15.00) per Single "H" Frame, which shall be paid or tendered before the construction of said lines is commenced and in any event within One year from the date of this agreement; in default of which payment or tender of payment, the rights and privileges herein granted shall, without further act on the part of the Grantor or Grantee, be and become null, void and of no effect.

Each of the parties hereto also binds the heirs, executors, administrator, successors and assigns of such party.

*Id.*

The trial court summarized the factual and procedural history of this case as follows:

On August 30, 2017, Appellants initiated this matter by Complaint, setting forth counts for Continuing Trespass (Count I), Permanent Trespass (Count II), Assault (Count III), Intentional Infliction of Emotional Distress (Count IV), and Respondeat Superior (Count V). Among other things, Appellants allege:

• Met-Ed's agents entered upon property located outside the Easement, causing damage through machinery and human traffic and denying Appellants enjoyment of the Property.

• Met-Ed's agents knowingly continue to trespass upon land outside of the Easement.

• Met-Ed, through its agents, put Appellants in fear of "imminent, offensive contact and bodily injury" through threats and bringing armed guards with them while working on utility equipment.

• Met-Ed's agents engaged in "extreme and outrageous conduct, intentionally or recklessly" causing severe emotional distress to Appellants.

• Met-Ed is responsible for the direct actions and emotional distress inflicted by its agents.

On October 4, 2017, Appellees filed their Answer with New Matter and Counterclaims, in which they deny Appellants' allegations and aver that the individuals referenced in the Complaint had not been at Appellants' Property or spoken with Appellants since 2013. Further, Met-Ed set forth two counts against Appellants for Breach of Easement (Count I) and Trespass (Count II) (together, the "Counterclaims"). Specifically, Met-Ed alleges Appellants refuse(d) permission to exercise its rights under the Easement, and that Appellants constructed permanent fixtures within the Easement boundaries (the in-ground pool, concrete pool patio,

and greenhouse/shed). On November 13, 2017, Appellants filed their response thereby closing the pleadings.

The parties then engaged in a period of pretrial discovery. Relevant to the within appeal, Appellees propounded a set of written Requests for Admissions upon Appellants ([response] due December 28, 2017). As of March 8, 2018, Appellants had not served objections or responses to the Requests for Admissions, at which time Met-Ed filed a Motion for Partial Summary Judgment (the "First Motion") seeking an order (a) dismissing Appellants' claims, and (b) declaring that the Easement "burdens a strip of land two hundred (200) feet in width across the said property belonging to the [Appellants]." [*See* First Motion]. On May 25, 2018, the Hon. Jeffrey K. Sprecher (Ret.) ("Judge Sprecher") granted Met-Ed's First Motion, dismissing all Appellants' claims and entering judgment confirming the validity and location of the Easement.[4]

On April 10, 2024, after a significant period of pretrial discovery/case dormancy, Met-Ed filed a dispositive motion on the remaining Counterclaims (the "Second Motion"). In it, Met-Ed argue[d] that, upon the existing discovery record, no genuine issue of material fact remains as to whether the pool, greenhouse, and shed were/were [*sic*] located within the Easement. As such[,] Met-Ed requested judgment by order that Appellants remove the offending structures from the Easement.

---

[4] The order states:

[Appellants'] claims are dismissed in their entirety with prejudice; (2) Judgment is entered in favor of [Appellees] against [Appellants] on all claims asserted by [Appellants] in this lawsuit; (3) The [E]asement owned and/or held by [Appellees] Met[-Ed,] burdening the real property owned by [Appellants] and commonly known as 620 Gouglersville Road, Cumru Township, Berks County, Pennsylvania[,] burdens a strip of land two hundred (200) feet in width across the [P] property belonging to [Appellants]; and (4) [Appellees'] pending counterclaims against [Appellants] shall proceed through discovery, dispositive motion(s), and trial as may become appropriate.

Order, 5/25/18, at ¶¶1-4.

On August 12, 2024, the parties argued their positions before the [t]rial [c]ourt. After careful consideration of the initial and/or supplemental written submissions, together with full review of the discovery record, applicable statutes, and controlling case law, the [t]rial [c]ourt entered the November 2024 Order granting judgment in favor of Met-Ed and against Appellants on the Counterclaims.[5]

On December 21, 2024, Appellants timely filed the within appeal (the "Appeal").[6] Pursuant to Pa.R.A.P. 1925(b), the [t]rial [c]ourt directed Appellants to file a Concise Statement of Matters Complained of on Appeal.

Trial Court Opinion (TCO), 2/24/25, at 2-4 (footnote omitted and some formatting altered). Both the trial court and Appellants have complied with Rule 1925.

On appeal, Appellants raise the following issues for our review:

1. Did the [t]rial [c]ourt err in granting summary judgment in favor of Appellees [and] dismissing all Appellants' claims?

2. Did the [t]rial [c]ourt err in granting summary judgment in favor of Appellees' counterclaims?

Appellants' Brief at 3 (formatting altered).

In reviewing an order granting or denying summary judgment,

[w]e view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only

---

[5] The trial court entered summary judgment in favor of Appellees and against Appellants on all claims asserted by Appellees in the lawsuit; the court further ordered that Appellants' swimming pool be removed or completely filled with dirt/land within 120 days, and that Appellants remove any additional improvements and/or structures which encroach on the Easement within 120 days. Order, 11/27/24, at ¶¶ 1-3.

[6] This appeal was initially filed with the Commonwealth Court. By order dated May 13, 2025, the Commonwealth Court transferred the appeal to this Court.

where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Siciliano v. Mueller***, 149 A.3d 863, 864 (Pa. Super. 2016) (citation omitted). When deciding a motion for summary judgment, the record is explicitly limited, and consists of the pleadings, depositions, admissions, responses to interrogatories, affidavits, and reports signed by expert witnesses that comply with the rules of discovery. ***Finder v. Crawford***, 167 A.3d 40, 44 (Pa. Super. 2017) (citation omitted).

In their first issue, Appellants challenge the trial court's ruling with respect to Appellants' complaint. Appellants argue that the trial court erred in granting summary judgment in favor of Appellees and dismissing all of Appellants' claims. Appellants' Brief at 11-13.

In Count I of their Complaint (Continuous Trespass), Appellants argued that Appellees overstepped their rights under the Easement Agreement and encroached on Appellants' property. Appellants' Complaint, 8/30/17, at ¶¶37-42. Appellants' Count II (Permanent Trespass) is based on allegations similar to those in Count I, with further allegations of damage caused by Met-Ed's "vegetation management" activity. ***Id.*** at ¶¶44-50. Additionally, Appellants claim the width of the Easement granted under the Easement Agreement was "modified by agreement," and "currently, Met-Ed has an easement which covers a 30 foot-wide line of land on which it has poles, lines and related

equipment." ***Id.*** at ¶14-¶15. Counts III, IV and V of Appellants' Complaint are based on alleged intentional tortious conduct by Appellee, Barbara Stevens. ***Id.*** at ¶54. In Count III (Assault), Appellants allege tortious conduct giving rise to a claim of assault. In Count IV (Intentional Infliction of Emotional Distress), Appellants recite the same alleged tortious conduct as set forth in Count III. ***Id.*** at ¶59. Finally, in Count V (Respondeat Superior), Appellants plead a theory of respondeat superior to claim that Met-Ed is liable for Appellee Barbara Stevens' alleged tortious conduct. ***Id.*** at ¶¶70-72.

On November 28, 2017, during pretrial discovery and in accordance with Pa.R.Civ.P. 4014 (Request for Admissions), Appellees served Appellants with Requests for Admissions. Pa.R.Civ.P. 4014(a) provides:

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rules 4003.1 through 4003.5 inclusive[,] set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness, authenticity, correctness, execution, signing, delivery, mailing or receipt of any document described in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or available for inspection and copying in the county. The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the original process upon that party.

Pa.R.Civ.P. 4014(a).

Rule 4014(b) addresses the consequences when a party fails to respond or object to a request for admissions. Rule 4014(b) provides:

> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within thirty

- 8 -

days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission an answer verified by the party or an objection, signed by the party or by the party's attorney….

Pa.R.Civ.P. 4014(b).

"When a party is served with a request for admissions: '(h)e may ignore the request, in which case he will be held to have admitted the matters requested unqualifiedly….'" ***Innovate, Inc. v. United Parcel Service, Inc.***, 418 A.2d 720, 723 (Pa. Super. 1980) (quoting Goodrich-Amram, Standard Pennsylvania Practice, Section 4014(b)(2), Vol. 4, Page 269). "Summary judgment may be entered prior to the completion of discovery in matters where additional discovery would not aid in the establishment of any material fact." ***Manzetti v. Mercy Hosp. of Pittsburgh***, 776 A.2d 938, 950–51 (Pa. 2001) (citing Pa.R.Civ.P. 1035.2(1)).

Here, the entry of summary judgment was proper because Appellants did not answer or object to Appellees' Requests for Admissions. Rather, Appellants relied solely on their pleadings for their assertions of trespass and tortious conduct. As the trial court explained:

The May 2018 Order dismissed with prejudice all five counts raised in the Complaint and rejected an accompanying averment that the original utility Easement had been reduced from 200 feet-wide to 30-feet-wide by implication, agreement, and/or operation of law. Upon examination of the record related to the First Motion, Appellants failed to respond to written discovery, resulting in deemed admissions. In consideration of these admissions, Judge Sprecher found, among other things, that the factual allegations underpinning Counts III, IV, and V of Appellants' Complaint occurred more than four years prior to suit.

The Complaint itself only refers to the dates of alleged incidents as transpiring "over the past several months." Nowhere in the Complaint are alleged tortious actions by agents of Met-Ed identified with temporal specificity. The "past several months" is undefined in the Complaint. Met-Ed, presumably, sought to narrow that timeframe with its written discovery, including the Request for Admission(s) asking Appellants to admit or deny that the agents in question had not communicated with them or been to their property since 2013. Without sufficient temporal pleading, the deemed admissions established that the alleged incidents occurred sometime during or before 2013. Those counts—each sounding in tort—were subject to a two-year statute of limitation. As a result, Judge Sprecher determined Counts III, IV, and V were stale and dismissed them.

As to the remaining claims—Counts I and II for continuing and permanent trespass, respectively—it was also deemed admitted that the attached copies of the deed to the Property and recorded Easement burdening it were accurate and factually established. The recorded Easement spelled out that the width of the Easement was 200 feet, not 30 feet as alleged. Nothing in the existing discovery record demonstrates that the original 200-foot-wide dimensions were altered by expansion or diminishment. In any event, modifications need to be in writing so as to comport with the Statute of Frauds – no such writing exists. ***See Haines v. Minnock Construction Co.***, 433 A.2d 30, 33 (Pa. Super. 1981). Further, Appellants admitted during sworn depositions (conducted January 26, 2022), that they were aware of, and do not dispute, that the existing utility Easement running through the Property is 200-foot-wide. ***See*** [Appellees'] Brief in Support of Second Motion at 5-10 (with reference to deposition testimony). Appellants further admitted they were aware of the Easement when they chose where to improve the Property by constructing the in-ground pool, greenhouse, and shed. ***Id.***

Counts I and II of the Complaint both hinged upon a factfinder agreeing that the Easement was only 30 feet in width. Once it was established as an unopposed fact that it was 200-feet, Judge Sprecher dismissed those counts as well, presumably because the averments were related to actions allegedly taken by Met-Ed outside of the 30-foot corridor but still within the 200-foot-wide Easement.

TCO at 6-7 (footnote omitted).

Because Appellees' request for admissions were deemed admitted due to Appellants' failure to respond, we discern no error of law or abuse of discretion in the trial court's conclusion that Appellants failed to establish any genuine issue of material fact relative to their Complaint. *See L & M Real Estate Developments, LLC*, 328 A.3d at 1073; *Siciliano*, 149 A.3d at 864; *Innovate, Inc.*, 418 A.2d at 723. Accordingly, we affirm the trial court's entry of summary judgment in favor of Appellees and the corresponding dismissal of Appellants' claims.

We next address Appellants' second issue, in which they claim that the trial court erred by granting summary judgment in favor of Appellees on their counterclaims. Appellants' Brief at 13-16. In their counterclaims, Appellees alleged: Breach of Easement (Count I), alleging Appellants refused Met-Ed permission to exercise its rights under the Easement Agreement; and Trespass (Count II), alleging that Appellants constructed permanent fixtures — an in-ground pool, concrete pool patio, and a greenhouse/shed — within the Easement boundaries. Appellees' Answer to Appellants' Complaint with New Matter and Counterclaim, 10/4/17, at 26-30.

As discussed above, Appellees served Appellants with requests for admissions, and Appellants did not respond. Specifically, Appellees' requests for admissions 8 and 9 are relevant to establishing that Met-Ed has contractual rights under the Easement Agreement and Appellants are obligated to allow Met-Ed to exercise those rights. Request for Admission 8 states: "[Met-Ed] is the current owner and/or beneficial holder of the easement rights set forth in

the Utility Easement that burdens the Property." Appellees' First Request for Admissions, 11/29/17, at 11. Request for Admission 9 states: "[Appellants] are obligated under the terms of the Utility Easement to allow Met[-Ed] to exercise its rights under the Utility Easement on the Property." *Id.* at 12. Further, during discovery, Appellees deposed Appellant Edward Szczepkowski, who testified as follows:

> [Appellees' Counsel] Q: You're not disputing, sir, are you, that there is an easement and a right-of-way that goes through your property that is 200 feet wide that your predecessor in title had given to Met-Ed, correct?
>
> [Appellant Edward Szczepkowski] A: No, I'm not.
>
> Q: All three of those structures, the swimming pool with the concrete patio, the greenhouse which has now been moved, and the shed, all three of those structures, you made the decision to build them or erect them within the 60-foot right-of-way of Met[-Ed], correct?
>
> A: Well, the shed and the greenhouse in the right-of-way, but not the pool, I made that decision.
>
> Q: All right. And I just want to clear that up. You could have put the shed anywhere on your 5 acres of land, but you made the decision to place the shed where you did[,] which is within the right-of-way which is roughly 39 feet away from the centerline of the utility pole, correct?
>
> A: Right, yes.
>
> Q: If you wanted to, you could have put that shed on the other side of your driveway, correct?
>
> A: Yes.
>
> Q: The greenhouse, when you first erected the greenhouse approximately 10 years ago, you made the decision to place that greenhouse less than 30 feet from the centerline of the right-of-way, correct?

- 12 -

A: Yes.

Q: So there is no dispute regarding those two structures, right, the greenhouse and the shed?

A: Right, yes, no dispute.

Q: All right. Now, on the swimming pool, again, you and your friend placed the concrete macadam or the concrete, I guess concrete is probably the best word, in the area that's depicted on Exhibit 8, right?

A: Yes.

Q: And, again, you could have put that swimming pool, as depicted on, I think, Exhibit 9 and 10[,] anywhere you really wanted to on you[r] 5 acres of land, correct?

A: Yes.

Q: But you made the decision back in 1995 that you were going to build the swimming pool where it's located[,] and build the concrete apron or patio around that swimming pool[,] knowing full well that part of the concrete patio for the swimming pool would have been within the 60-foot right-of-way, correct?

A: Yes.

Q: So you agree with me that Met-Ed has a right to maintain the right-of-way on your property 140 feet north of the centerline, 60 feet south of the centerline?

A: Yes.

Q: Yet despite knowing that they have the right to do that you still confronted the five guys doing the herbicide treatment, telling them not to do it?

A: Yes. I didn't tell them not to do it[,] I asked them not to do it. There is a difference.

Appellees' Brief In Support Of Motion For Summary Judgment, 6/20/24, at 5-9 (quoting Deposition of Edward Szczepkowski, 1/26/22, at 5-9).[7]

Consistent with the foregoing, the trial court addressed the Easement Agreement, the attendant easement rights, and Appellants' admissions to encroaching on the Easement.  The trial court explained:

> … Met-Ed asserts that the Easement is used for an "806 Line" (a 69kV electric transmission line), and that Appellants' encroachment threatens the safety of persons, as well as the ability of Met-Ed to protect and preserve the utility lines for the benefit of the general public.
>
> … [T]he trial court was left with the plain language of the negotiated parameters of the Easement. The Easement calls for a 200-foot-wide area on the Property for the placement of electrical lines, associated equipment, and maintenance. The underlying agreement, as recorded, does not permit the owner of the Property to encroach upon the Easement and, as set forth above, no written evidence exists to suggest the Easement was modified post-1923. No dispute remains, therefore, that Appellants: (a) were aware of the Easement; (b) knew the location and boundaries of the Easement; and (c) knew that the three structures they built encroach upon the Easement.

TCO at 8.

---

[7] While the notes of testimony from the deposition are not included in the certified record, Appellees quote the deposition in their Brief in Support of Motion for Summary Judgment, and the trial court references the deposition testimony in its opinion.  *See* TCO at 7.  Appellants have not objected to the accuracy or reproduction of the notes of testimony.  This Court has relied on such documents in similar circumstances, where the documents are not in the certified record, but are included in a reproduced record without objection. *See, e.g., C.L. v. M.P.*, 255 A.3d 514, 519 n.3 (Pa. Super. 2021) (citing *Commonwealth v. Barnett*, 121 A.3d 534, 544 n.3 (Pa. Super. 2015) (stating that "[w]hile this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it").

Appellants admit to encroaching on the Easement, but argue that the encroachment is *de minimus*. **See** Appellants' Brief at 13, 15 (stating that the swimming pool was "barely encroaching" upon the easement). In support, Appellants cite **Big Bass Lake Cmty. Ass'n v. Warren** 23 A.3d 619 (Pa. Commw. Ct. 2022). First, we note that Commonwealth Court decisions are not binding on this Court. **See Dobransky v. EQT Prod. Co.**, 273 A.3d 1133, 1146 n.10 (Pa. Super. 2022) (*en banc*) (recognizing that decisions of the Commonwealth Court are not binding upon this Court, but may serve as persuasive authority). Moreover, the trial court addressed and distinguished **Big Bass**, and the case it relied upon, **Moyerman v. Glanzberg**, 138 A.2d 681 (Pa. 1958). The trial court found that Appellants knowingly encroached on the Easement, and that the encroachment was not *de minimus*. The trial court reasoned:

> Appellants admitted under oath to knowledge of the Easement and chose to erect structures/a pool within its boundaries. Further, beyond circumstantiality, no direct evidence exists establishing that Met-Ed knew of the encroachments and nevertheless delayed in acting timely to protect its rights. Put simply, the trial court was not presented with sufficient evidence to determine that Appellants' encroachment was *de minimis* and/or did not materially impact Met-Ed's use and enjoyment of its Easement rights. The in-ground pool, greenhouse, and shed are substantially larger than a one-foot-wide gutter (**Moyerman**), or a two-foot-high by 50-foot-long landscaping wall (**Big Bass**). Although the *de minimis* argument remains an academically interesting one, the trial court is without controlling law that would permit relief to Appellants, even if the trial court deemed it equitable.
>
> * * *
>
> Appellants argue the trial court failed to view the facts of the matter in the light most favorable to their position, which is

required when granting summary judgment against a party's interests. The pertinent facts credibly raised in verified pleadings and placed upon the record were given due consideration by the trial court and, anywhere some controversy of fact still remained, they were viewed most favorably for the Appellants. The most controlling facts in this matter, however, were the existence of the Easement, the size of the Easement, and Appellants' awareness as to their encroachment. These facts were not in controversy as sworn testimony by Appellants showed they were aware of the Easement and its restrictions. Further, facts demonstrated that the improvements are located within the Easement.

TCO at 9-10.

After review, we discern no error of law or abuse of discretion. *Siciliano*, 149 A.3d at 864. We agree with the trial court as to the established rights of Met-Ed under the Easement Agreement, the impairment of those rights, including Appellants' knowing encroachment, and the inapplicability of a *de minimus* encroachment theory. Accordingly, we affirm the trial court's entry of summary judgment in favor of Appellees on their counterclaims.

Application to quash or dismiss denied. Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/26/2026

- 16 -