J-S36003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| DAVID AND LISA SERESKY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.P. MORGAN CHASE BANK, N.A. | : | No. 673 MDA 2024 |

Appeal from the Order Entered April 24, 2024
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  S-1704-2019

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY LAZARUS, P.J.:               **FILED JANUARY 14, 2025**

David Seresky and Lisa Seresky (collectively Plaintiffs/Appellants) appeal from the order, entered in the Court of Common Pleas of Schuylkill County, granting summary judgment in favor of J.P. Morgan Chase Bank, N.A. (Defendant/Appellee),[1] and dismissing their complaint.    After careful consideration, we affirm.

The trial court set forth the facts of this case as follows:

Plaintiffs [], husband and wife, were the owners of property located at 198 East Main Street, Ringtown, Schuylkill County, Pennsylvania (the "Property").  On December 3, 2003, Plaintiffs executed and delivered a note to First Mutual Corporation in the amount of $120,531.00[,] which was secured by a mortgage against the Property.  Subsequently, the note and mortgage were assigned to [Defendant].

---

[1] JPMorgan Chase Bank, N.A. (Defendant/Appellee) is the proper defendant in this action.

Plaintiffs last made payment on the note on June 30, 2016. On January 20, 2017 (approximately seven months after the last payment on the note), the Property was damaged by fire, forcing the Plaintiffs to relocate [to a Frackville address]. At the time of the fire, the Property was insured by Metropolitan Property and Casualty Insurance Company. The insurance policy named Defendant as a loss payee. Plaintiffs filed an insurance claim for the January 20, 2017 fire, which was denied.

Defendant commenced a foreclosure action against Plaintiffs on April 11, 2017. Plaintiffs were served the [foreclosure action] complaint on July 26, 2017. Plaintiffs failed to file an answer or response to the mortgage foreclosure action[,] nor did they participate in the Schuylkill County Mortgage Foreclosure Diversion Program, which was created to allow struggling homeowners the opportunity to avoid losing their homes. The Defendant sought in rem judgment against Plaintiffs in the amount of $117,233.17. In December 2017, Defendant submitted a sworn statement and proof of loss to Plaintiffs' insurance company in the amount of $84,960.00, which was paid to [the Defendant] that same month.

In January of 2018, Defendant sent Plaintiffs a mortgage statement to their new address in Frackville. The [s]tatement, dated January 16, 2018, informed Plaintiffs: 1) that the loan had been accelerated; 2) that $84,960.00 had been placed in a restricted escrow account and applied to the total amount due; 3) that the prior amount due was $123,787.69; and 4) that the new total amount due to bring the account current (after the escrow payment was applied) was $19,895.47. Defendant made multiple phone calls to Plaintiffs from December 29, 2017 through February 13, 2018, which went unanswered, although Defendant was unable to clarify the purpose of these calls. The produced records indicate voice mail messages were left for Plaintiffs but no calls were returned. Plaintiffs made no effort to contact Defendant regarding the status of their account or the foreclosure.

On January 25, 2018, Defendant filed a [p]raecipe for [i]n [r]em [j]udgment for [f]ailure to [a]nswer and judgment was entered in its favor and against Plaintiffs in the amount of $117,223.17 (the same amount requested in the [c]omplaint). Mr. Seresky testified that he was in communication with Defendant throughout the process in an attempt to modify the mortgage, and Defendant's records confirm an application for modification had [been initiated]. However, Mr. Seresky was unable to provide any

credible details describing his efforts to modify.[2]   On June 12, 2018, Defendant sent Plaintiffs a notice they would be cancelled for any type of mortgage assistance.  On June 15, 2018, the Property was sold via sheriff's sale.  Defendant's judgment was in rem only and no effort was taken to pursue Plaintiffs personally.

Prior to the conclusion of the mortgage foreclosure action, Plaintiffs filed a lawsuit against their insurance carrier for the denial of their insurance claim related to the January 2017 fire. Plaintiffs were successful in that action and they were awarded $388,019.36 by way of arbitration.  Included in the award was the entire value of the Property, attorney fees, and an amount for bad faith.

Upon entry of the award, the insurance company argued it [was entitled to] a credit for the $84,960.00 it paid to Defendant[. A]ccording to Plaintiffs, their insurance carrier failed to disclose both the proof of loss submitted to it by Defendant and the payment it made to Defendant.  There were no records from the insurance company submitted to indicate whether it had sent Plaintiffs[] any notice of the payment.

On September 3, 2019, Plaintiffs filed the subject action alleging a single count for common law fraud (material concealment). Specifically, Plaintiffs claim Defendant[] intentionally, deliberately[,] and maliciously filed an in rem judgment against them for the full amount owed without reduction for the insurance payment it received.  Plaintiff[]s further contend Defendant proceeded in a purposeful and intentional course of conduct fraught with a reckless disregard of their rights under the terms of the [m]ortgage.

Plaintiffs make numerous arguments in the alternative regarding the material concealment.  First, they argue that Defendant misapplied the funds[,] contrary to the requirements of the mortgage.  According to Plaintiffs, had Defendants properly

_____

[2] Credibility determinations are inappropriate at the summary judgment stage, especially since, in this instance, the trial court is required to view the evidence in the light most favorable to the non-moving party, the Plaintiffs.  **See Woodford v. Commonwealth Ins. Dep't**, 243 A.3d 60, 70 (Pa. 2020) (witness's credibility is not proper consideration at summary judgment; rather, such determination resides only with trier of fact).  Nevertheless, this error does not affect our analysis or final disposition.

applied the funds, the account would have been brought current and the foreclosure terminated. Plaintiffs also argue that[,] had they known about the payment and the re-calculated total amount due, they would have taken steps to save the Property. Lastly, Plaintiffs argue that Defendant improperly took an in rem judgment for the full amount listed in the complaint rather than the recalculated amount to bring the account current.

Defendant filed an answer and new matter. Plaintiffs filed a response to the new matter and both parties engaged in discovery. . . . [The court] entered a [s]cheduling [o]rder on October 25, 2023, requiring discovery to be completed within 90 days.

. . . On January 23, 2024, Plaintiffs filed a [m]otion for [s]anctions and to [e]xtend [d]iscovery. Essentially, Plaintiffs argue[d] the corporate designees produced by Defendant were not knowledgeable about the subject matter on which they were expected to testify and Defendant's counsel intentionally and maliciously interfered with the flow of the depositions by raising an unreasonable number of improper objections. The parties had agreed that only objections to the form of the question would be raised at the deposition and all other objections would be reserved [for] trial. Counsel for the parties disagreed as to the definition of "the form of the question." Plaintiffs believe [c]ounsel's objections were meant to not only interfere with the flow of the deposition but intended to suggest an answer. The depositions occurred in October 2023, yet Plaintiffs did not raise this issue with the [c]ourt until the last day of the discovery deadline. The [c]ourt agreed with Defendant on the discovery issues and denied the Plaintiffs' [m]otion for [s]anctions and to [e]xtend [d]iscovery.

Of note, three corporate designees of Defendant were deposed along with both Plaintiffs. Further, [r]equests for [p]roduction, [i]nterrogatories, and [a]dmissions were also exchanged during discovery. . . . Plaintiffs have not provided any expert reports regarding their fraud claim.

[On February 22, 2024,] Defendant [filed] a [m]otion for [s]ummary [j]udgment[,] arguing that Plaintiffs fail[ed] to produce facts to support each element of common law fraud (material concealment) and that the gist of the action and economic loss doctrines preclude the common law fraud claim, as the relationship between the parties was the clear result of a mortgage and contractual obligations.

Plaintiff filed a timely response.  Both parties include portions of discovery in support of their respective positions.  . . .  In Plaintiffs' response, they again request leave of court to depose another corporate designee of Defendant who would be familiar with Defendant's restricted escrow account policy and procedure, but the [c]ourt does not find that would be necessary or provide any probative value to the case.

Trial Court Opinion, 4/24/24, at 1-7.  The court granted Defendant's motion for summary judgment and dismissed the Plaintiffs' case on April 24, 2024, finding, *inter alia*, that the Plaintiffs failed to establish damages.  The Plaintiffs filed a timely notice of appeal on May 9, 2024.  The Plaintiffs and the trial court have complied with Pa.R.A.P. 1925.  The Plaintiffs' Rule 1925(b) concise statement contains thirty numbered paragraphs raising various claims of error.

On appeal, the Plaintiffs raise the following issues for our review:

1. Did the [trial c]ourt err in concluding [the Plaintiffs] failed to make out a *prima facia* case for fraudulent concealment?

2. Did the [t]rial [c]ourt err in finding that the [Plaintiffs] suffered no damages because the [Plaintiffs] recovered bad faith and breach of contract damages in a separate, unrelated action brought against their homeowners insurance company [] in an amount which exceeded the value of their home?

3. Did the [t]rial [c]ourt commit[] an error of law or abuse its discretion by refusing to sanction [Defendant] for failing to supply knowledgeable and prepared designees for those topics and most importantly, topic 6[,] dealing with the restricted escrow account, or, in the alternative[,] allow discovery to be extended to permit the deposition of a knowledgeable and prepared designee?

4. Did the [trial c]ourt commit an error of law or abuse its discretion when it found that the potential testimony of a corporate designee familiar with Defendant's restricted escrow account policy and procedure would not be of probative value to the case[?]

- 5 -

5. Did the [trial c]ourt commit an error of law or abuse of discretion [by] conclud[ing] that [the] Plaintiffs' stance of intentional and material concealment was eviscerated by "evidence of the documentation sent to the Plaintiffs disclosing the insurance payment" when no such evidence exists and [the Plaintiffs] testified to the contrary.

Appellants' Brief, at 7-9 (reordered for ease of disposition).

The appellate standard of review from an order granting summary judgment is well-settled:

> In reviewing a grant of summary judgment, th[e appellate] Court's standard of review is *de novo* and our scope of review is plenary. A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and may grant summary judgment only where the right to such a judgment is clear and free from doubt. . . . An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion.

***Bourgeois v. Snow Time, Inc.***, 242 A.3d 637, 649-50 (Pa. 2020) (citations and quotation marks omitted). The record in a motion for summary judgment includes the "pleadings, any depositions, any answers to interrogatories, admissions of record, if any, and any affidavits filed by the parties." ***Stimmler v. Chestnut Hill Hosp.***, 981 A.2d 145, 154 (Pa. 2009) (citation omitted). The record also includes expert reports, if any. ***See Bourgeois***, ***supra*** at 650.

Although we rely on different grounds than those relied upon by the trial court to resolve this case, we conclude that the court properly dismissed the Plaintiffs' complaint. **See Mirizio v. Joseph**, 4 A.3d 1073, 1085 (Pa. Super. 2010) (appellate court not bound by trial court rationale and may affirm trial court for any valid reason supported by record). Here, in our view, the gist of the action doctrine[3] applies to bar the Plaintiffs from raising what are essentially breach of contract claims under the mortgage and insurance policy. **See Hart v. Arnold**, 884 A.2d 316, 340 (Pa. Super. 2005) ("Where fraud claims are intertwined with breach of contract claims and the duties allegedly breached are created and grounded in the contract itself, the gist of the action is breach of contract. Thus, claims of fraud in the **performance** of a contract are generally barred under the gist of the action doctrine.") (citations omitted; emphasis in original); **see also eToll, Inc.**, 811 A.2d at 17 ("fraud within the **performance** of a contract would be covered by the gist of the action doctrine") (emphasis in original).

Our Supreme Court has explained that the source of the alleged duty is the heart of the analysis of the gist of the action doctrine under Pennsylvania law:

> [t]he general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the

---

[3] "The question of whether the gist of the action doctrine applies is an issue of law subject to plenary review." **eToll, Inc. v. Elias/Savion Adver.**, 811 A.2d 10, 15 (Pa. Super. 2002).

underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

***Bruno v. Erie Ins. Co.***, 106 A.3d 48, 68 (Pa. 2014) (citations and footnote omitted).

In their complaint, the Plaintiffs allege the Defendant acted "purposefully, intentionally, deliberately, willfully[,] wantonly[,] and with reckless disregard for the [Plaintiffs'] rights **under the terms of the [m]ortgage**, and Pennsylvania's Rules of Civil Procedure[.]" Plaintiffs' Complaint, at ¶ 21 (emphasis added).

We find that that to the extent the mortgage gives rise to the alleged duties breached, the gist of the action doctrine applies. Further, the Plaintiffs never establish which Rule of Civil Procedure supports their claim. In this regard, to the extent that the Plaintiffs allege that the Defendant improperly sought the entry of a default judgment in the foreclosure action, or improperly calculated the amount owed by the Plaintiffs, those claims are governed by the terms of the mortgage.

Similarly, in their brief, the Plaintiffs assert that the "[Defendant] had a duty to abide by the requirements of the FHA Single Family Handbook[.]" Appellants' Brief, at 15-16. The Plaintiffs further allege that

> [T]he HUD/FHA Single Family Handbook 4000.1 [] imposes an affirmative duty on the part of [the Defendant] to file and settle claims expeditiously, promptly release to borrowers all insurance settlement proceeds for personal property and additional living expenses[,] and to produce a viable plan for repairs of a mortgaged property with a requirement to expedite the release of insurance proceeds for repairs. Further, [the Defendant] was required to only apply insurance proceeds to arrearages if the amount of the proceeds exceeded the cost to repair or if the proceeds were insufficient to repair the home based upon a certified repair estimate.

*Id.* at 36-37. The Plaintiffs also claim that "[v]irtually every pleading, [m]otion, [r]esponse[,] and [b]rief filed by Appellants asserts the duty to disclose by [the Defendant]. Any question on this disputed issue is answered by the duties imposed by the [m]ortgage, [HUD/FHA] Single Family Handbook[,] and the [m]ortgage [a]ssistance requests made by Appellants." *Id.* at 45.

In the instant case, we conclude that the Plaintiffs' fraud claim against the Defendant is entirely dependent on the relationship between the parties that is created by the mortgage contract, thus, the Plaintiffs' claim must be dismissed under the gist of the action doctrine. *See Strausser v. PRAMCO, III*, 944 A.2d 761, 767-68 (Pa. Super. 2008) (fraud claim properly dismissed under gist of the action doctrine where alleged fraud directly related to duty arising from underlying contractual rights as defined by loan agreement and

mortgage, and all claims could be resolved only through determination of those contractual rights). Indeed, here, all that the Plaintiffs point to as a source of the Defendant's duty to disclose, or its duty to apply the insurance funds to the Plaintiffs' arrears, is the language of the mortgage and related HUD/FHA materials,[4] as well as the Defendant's knowledge that the Plaintiffs were actively seeking to save their home because they requested a loan modification and/or sought mortgage assistance. To the extent that the Plaintiffs argue that social policy imposes a duty on a party holding another's money in escrow to inform them of such—or that such a social duty arises under the specific circumstances of this case—we observe that: (1) the Defendant would have never held the Plaintiffs' money but for the contractual mortgage relationship between the parties, which includes the terms of the insurance policy and HUD/FHA materials; (2) it is undisputed that the Defendant's right to apply for and hold insurance money in escrow is governed by the language of those contracts; and (3) in any event, there is a general rule that no social duty arises between a borrower and a lender because of

_____

[4] "[Defendant] had the affirmative obligation to disclose not only the insurance claim but the actual receipt of proceeds both under the terms of the mortgage it authored and under the FHA/HUD regulations." Appellant's Brief, at 35. "Had [Defendant] followed the terms of [the] mortgage or the mandates of the HUD Handbook, the foreclosure would have been avoided." *Id.* at 45. "First, the mortgage itself requires that [Defendant] can either cure the arrearages or make repairs. To be clear: the mortgage upon which [Defendant] foreclosed provides [it] with only 2 options when in receipt of insurance proceeds[.]" *Id.* at 42.

that contractual relationship outside of the contractual duty of good faith, which must be alleged as a breach of contract. *See Federal Land Bank of Baltimore v. Fetner*, 410 A.2d 344, 348 (Pa. Super. 1979); *see also Cable & Assocs. Ins. Agency v. Commercial Nat'l Bank*, 875 A.2d 361, 364 (Pa. Super. 2005) (lender generally not liable for harm caused to borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans)

Accordingly, although we observe that the trial court granted the Defendant's motion for summary judgment rather than found that the gist of the action doctrine applies to bar the Plaintiffs' claim, the court properly dismissed the Plaintiffs' complaint nonetheless. *See Mirizio*, *supra*. Our disposition of the Plaintiffs' first issue on appeal renders their other four issues moot. *See In re Duran*, 769 A.2d 497, 502 (Pa. Super. 2001) (case moot if event occurs to eliminate active claim or controversy at any stage of proceedings).

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/14/2025

- 11 -